## WHITE–SMITH MUSIC PUBLISHING COMPANY v. APOLLO COMPANY.

### APPEALS FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 110, 111.  Argued January 16, 17, 1908.—Decided February 24, 1908.

While this court is not bound under the doctrine of *stare decisis* by the decisions of lower Federal courts which have not been reviewed by this court, as to the construction of a Federal statute, or by the decisions of the highest courts of foreign countries construing similar statutes of those countries, where all of such decisions express the same views on the subject involved, the omission of Congress, when subsequently amending the statute, to specifically legislate concerning that subject may be regarded by this court as an acquiescence by Congress in the judicial construction so given to the statute.

While the United States is not a party to the Berne Copyright Convention of 1886, this court will hesitate to construe the copyright act as amended March 3, 1891, in such manner that foreign authors and composers can obtain advantages in this country which, according to that convention, are denied to our citizens abroad.

What is included within the protection of the copyright statute depends upon the construction of the statute itself, as the protection given to copyright in this country is wholly statutory.

The amendment of § 4966, Rev. Stat., by the act of January 6, 1897, 29 Stat. 481, providing penalties for infringements of copyrighted dramatic or musical compositions, did not enlarge the meaning of previous and unamended sections.

A "copy" of a musical composition within the meaning of the copyright

(1)

statute is a written or printed record of it in intelligible notation and this does not include perforated rolls which when duly applied and properly operated in connection with musical instruments to which they are adapted produce the same musical tones as are represented by the signs and figures on the copy in staff notation of the composition filed by the composer for copyright.

The existing copyright statute has not provided for the intellectual conception, even though meritorious, apart from the thing produced; but has provided for the making and filing of a tangible thing against the duplication whereof it has protected the composer.

Considerations of the hardships of those whose published productions are not protected by the copyright properly address themselves to Congress and not to the courts.

147 Fed. Rep. 226, affirmed.

THE facts are stated in the opinion.

*Mr. Livingston Gifford* for appellant:

Appellant's interpretation is in accord with the policy of the law and appellee's interpretation is not. The policy of the law is to protect the author against every form of piracy without distinction, and the piracy of a musical composition by reproducing and selling it in the form of perforated music is just as culpable as in any other form.

The Constitution purports to secure to authors "the exclusive right to their respective writings," and it is obviously not compatible with this to protect them only against the sale of their writings in a form which requires no assistance of mechanism for reading.

As this interpretation is the only one which will carry out its policy, the statute should certainly be so interpreted, unless such interpretation is inconsistent with its terms or with the terms of the Constitution.

Article I, § 8 of the Constitution, as interpreted by the decisions, is broad enough to include perforated music.

See the copyright law in which Congress has included as writings (§ 4952), books, maps, charts, dramatic or musical compositions, engravings, etc. In principle we ask for no broader interpretation here. And see also *Lithograph Co.* v. *Sarony,* 111 U. S. 53; *Holmes* v. *Hurst,* 174 U. S. 86; *Bleistein*

v. *Donaldson Co.*, 188 U. S. 239; *American Mutoscope Co.* v. *Edison Co.*, 137 Fed. Rep. 262.

The mutuality of the contract which the Constitution evidently contemplates between the Government, on the one hand, and the author or inventor on the other, also leads to the same conclusion.

If an author has among his writings a musical composition, the only possible way of "securing" to him the "exclusive right" thereto is by giving him the monopoly of this musical composition, no matter in what form it may be represented; otherwise, he gets only a partial exclusive right thereto. No composer can be truly said to have "the exclusive right" to his musical composition writings secured to him so long as others have the right to publish, and sell them without his consent, in the form of perforated music.

"Musical composition," the term of the statute under which this case comes, is broad enough to include perforated music.

As applicable to this case, the right conferred by the statute is the "sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending" the "musical composition." The undeniable policy of the law is to cover all forms of piracy.

This court has substantially decided that the subject of property in a copyrighted musical composition is the order of the notes in the author's composition, by adopting in *Holmes* v. *Hurst*, 174 U. S. 86, Mr. Justice Erle's definition of the subject of property in a book or literary composition as being "the order of the words in the author's composition." And the same thing must also be true as to the notes of a musical composition. The only thing that has to be copied to constitute a copy of the copyright property is the order in which the notes were set down.

Appellee's witnesses admit that in making the infringing perforated music they copy the order of the notes.

It is immaterial that in the year 1831, when the term "musical composition" was first placed in the copyright statute the

perforated form of musical compositions was not known. See *Edison* v. *Lubin*, 122 Fed. Rep. 240, holding that while the advance in the art of photography has resulted in a different type of photograph, yet it is none the less a photograph.

So, as to music, while the perforated notation is a different type of notation, yet it is none the less a "musical composition;" none the less a perfect record, and none the less a "writing."

Where the order of the notes or words is copied, infringement of literary or musical compositions is not avoided by variations in other respects. *Jollie* v. *Jacques*, 1 Blatch. 625; *Blume* v. *Spear*, 30 Fed. Rep. 631; *Daly* v. *Palmer*, 6 Blatch. 266; *Nicols* v. *Pitman*, 26 Ch. Div. 374; *Edison* v. *Lubin*, 122 Fed. Rep. 240; *Fishel* v. *Leuckel*, 53 Fed. Rep. 499; *Falk* v. *Howell*, 37 Fed. Rep. 202; *Falk* v. *Donaldson*, 57 Fed. Rep. 32; *Turner* v. *Robinson*, 10 Ir. Ch. 121, 510; Drone on Copyright, 385; Scrutton on Copyright, ed. 1903, 135, note.

The meaning of "musical composition" in § 4952, must be read in the light of its manifest meaning in § 4966 wherein it is the subject of protection against public performance.

The prohibition of the public performance of a copyrighted "musical composition" is the prohibition of the public reproduction of that order or succession of notes which constitutes the composition. It is the musical composition that is publicly performed, and not a sheet of music.

Public performance is prohibited, whether or not any notation or record be used. And it cannot be questioned that a performance in public of a musical composition upon an Aeolian organ or pianola, by means of perforated music, would be as much a public performance of a musical composition as if it had been played in public from a printed sheet of music in staff notation, and as such would be equally within the condemnation of the statute, provided the musical composition had been copyrighted. One who, like the appellee, sells the musical composition is a contributory infringer with the infringer under § 4952 who plays it in public.

Readability by the person without mechanical assistance is

not made a test of copyrightability or of infringement by the statute. So long as it can be read or reproduced in any way, it makes no difference what assistance the person calls in from means known in the art.

Whether a musical composition, in addition to the musical function performed by the order of its notes, does, or does not, perform also a mechanical function is not made a test of copyrightability or of infringement by the statute.

It is impossible to say that the order of the perforated notes is the mere adjunct of a valve mechanism, because the valve mechanism would work with the perforations in whatever order. It is not the machine that puts or requires the perforations in this order, but the appellee.

There is no controlling authority opposed to complainant's contention. The two decisions in this country relied upon by the appellee are neither binding upon this court nor apposite to the facts disclosed by this record. *Kennedy* v. *McTammany,* 33 Fed. Rep. 584, and *Stern* v. *Rosey,* 17 App. D. C. 562, discussed and distinguished. The English decision of *Boosey* v. *Whight,* L. R. 1900, 1 Ch. 122, was based upon the narrow wording of the English statute, and in view of the amendment of that statute in 1902, can no longer be regarded as authority, even in England.

*Mr. Charles S. Burton* and *Mr. John J. O'Connell* for appellee:

Copyright is strictly statutory in the United States. If a common law right ever existed it was taken away by the statute of Anne, and that statute and those amendatory of it are now in England the only source of an author's right. There never existed any common law right of copyright in the United States. Copyright in this country is the creature of statute pure and simple. *Wheaton* v. *Peters,* 8 Pet. 591, see p. 664 quotation; *Banks* v. *Manchester,* 128 U. S. 244; *Thompson* v. *Hubbard,* 131 U. S. 123.

Existing by virtue of statute only, the limitations of copyright are those which the statute fixes, or, more accurately

speaking, its extent is only that which the statute gives. *Ewer* v. *Coxe*, Fed. Cases 4,584; *S. C.*, 4 Wash. C. C. 487; *Holmes* v. *Hurst*, 174 U. S. 82; *Perris* v. *Hexamer*, 99 U. S. 674.

The statutes creating and covering copyright must be strictly construed in all respects. *Banks* v. *Manchester*, 128 U. S. 244; *Bolles* v. *Outing Co.*, 175 U. S. 268.

Departure from this rule of strict construction cannot be justified on the ground of extending the statute by analogy from things expressed, to things thought to be similar; or from rights named, and defined in respect to named subjects, to analogous rights in respect to subjects thought to be analogous.

As the legislature alone created the right and set its bounds in the first instance, so the legislature may, as civilization and art develop and the considerations governing legislative discretion change, extend or contract those bounds from year to year and from generation to generation, but as the creation of the right waited, so the extension, as much as its contraction, must wait upon the legislative act.

If the invention of automatic musical instruments and the graphophone have opened new fields and methods for the exploitation, promulgation, or what may be called "publication" of musical compositions which did not exist or were not in contemplation of the legislature when the present statutes were enacted, it is not for the courts to enter the domain of legislation to weigh the considerations either of equity or expediency which might move for or against such proposed extensions. All arguments directed to the supposed reasonableness of treating copyright as covering automatic means of audible reproduction of speech and music are utterly irrelevant and beside the question. See *Osgood* v. *Aloe Instrument Co.*, 69 Fed. Rep. 291; *Higgins* v. *Keuffel*, 140 U. S. 428; *Werckmeister* v. *American Lithograph Co.*, 117 Fed. Rep. 360; *Tompkins* v. *Rankin*, Fed. Cases, 14,090; *Thompson* v. *Hubbard*, 131 U. S. 123; *Littleton* v. *Oliver Ditson Co.*, 62 Fed. Rep. 597, affirmed, 67 Fed. Rep. 905; *Wood* v. *Abbott*, Fed. Cases, 17,938; *Hills* v. *Austrich*, 120 Fed. Rep. 862.

Musical compositions mentioned as the subject of copyright are tangible and legible embodiments of the intellectual product of the musician, and not the intangible intellectual product itself.

"Copies" which infringe a musical copyright must be tangible embodiments of the intellectual product of the composer in the same sense and for the same purpose as tangible embodiment which constitutes the copyrighted "musical composition."

The primary use and adaptation of the thing determines its copyrightability or infringement of copyright. Intention as to use is material and may be controlling.

Things intended for mechanical function—for use in themselves—will not infringe copyright, and are not copyrightable merely because of incidentally being able to perform some part of the function of things copyrightable. *Baker* v. *Selden,* 101 U. S. 99; *Amberg File Co.* v. *Shea,* 82 Fed. Rep. 314, aff'g 78 Fed. Rep. 429; *Rosenbach* v. *Dreyfuss,* 2 Fed. Rep. 217.

The protection designed to be afforded to the composer by copyright of a musical composition is only the monopoly of the multiplication and selling of copies, and this applies to musical compositions as it does to all other subjects of copyright.

As to this definition of the monopoly see *Stephens* v. *Cady,* 14 How. 529; *Stowe* v. *Thomas,* Fed. Cases, 13,514; *Lawrence* v. *Dana,* Fed. Cases, 8,136; *Perris* v. *Hexamer,* 99 U. S. 674.

That perforated sheets and other mechanical means of automatically producing music audibly are not infringements of copyrights upon the musical compositions which are thus audibly reproduced, has been the conclusion of every court of England and America before which this question has ever come for decision. *Stern* v. *Rosey,* 17 App. D. C. 562; *Kennedy* v. *McTammany,* 33 Fed. Rep. 584; *Boosey* v. *Whight,* 15 L. T. R. 322 (1899); 1 Ch. 836 (1899); 80 L. T. R. (N. S.) 561.

These prior decisions have established a rule of property and of business, and should be sustained under the doctrine of *stare decisis,* unless greater injury would result from sustaining than from reversing them. Every enactment of Congress is

properly interpreted by reference to established public, policy and then known existing conditions.

The existence at the time of the enactment of the United States copyright law of 1891, of the Berne convention of 1886 compels the conclusion that said law of 1891 was not intended by Congress to subject perforated rolls to copyright.

By leave of court, the following briefs were filed in these cases on behalf of parties interested in the decision:

By *Mr. Nathan Burkan* for Victor Herbert sustaining the contentions of the appellant.

By *Mr. Albert H. Walker* for the Connorized Music Company; by *Mr. George W. Pound* for the De Kleist Musical Instrument Manufacturing Company and the Rudolph-Wurlitzer Company, sustaining the contentions of the appellee.

Mr. JUSTICE DAY delivered the opinion of the court.

These cases may be considered together. They are appeals from the judgment of the Circuit Court of Appeals for the Second Circuit (147 Fed. Rep. 226), affirming the decree of the Circuit Court of the United States for the Southern District of New York, rendered August 4, 1905 (139 Fed. Rep. 427), dismissing the bills of the complainant (now appellant) for want of equity. Motions have been made to dismiss the appeals, and a petition for writ of certiorari has been filed by appellant. In view of the nature of the cases the writ of certiorari is granted, the record on the appeals to stand as a return to the writ. *Montana Mining Co.* v. *St. Louis Mining Co.*, 204 U. S. 204.

The actions were brought to restrain infringement of the copyrights of two certain musical compositions, published in the form of sheet music, entitled, respectively, "Little Cotton Dolly" and "Kentucky Babe." The appellee, defendant below, is engaged in the sale of piano players and player pianos, known as the "Apollo," and of perforated rolls of music used

in connection therewith. The appellant, as assignee of Adam Geibel, the composer, alleged compliance with the copyright act, and that a copyright was duly obtained by it on or about March 17, 1897. The answer was general in its nature, and upon the testimony adduced a decree was rendered, as stated, in favor of the Apollo Company, defendant below, appellee here.

The action was brought under the provisions of the copyright act, § 4952 (3 U. S. Comp. Stat. Sup. 1907, p. 1021), giving to the author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same. The Circuit Courts of the United States are given jurisdiction under § 4970 (3 U. S. Comp. Stat. 3416) to grant injunctions according to the course and principles of courts of equity in copyright cases. The appellee is the manufacturer of certain musical instruments adapted to be used with perforated rolls. The testimony discloses that certain of these rolls, used in connection with such instruments, and being connected with the mechanism to which they apply, reproduce in sound the melody recorded in the two pieces of music copyrighted by the appellant.

The manufacture of such instruments and the use of such musical rolls has developed rapidly in recent years in this country and abroad. The record discloses that in the year 1902 from seventy to seventy-five thousand of such instruments were in use in the United States, and that from one million to one million and a half of such perforated musical rolls, to be more fully described hereafter, were made in this country in that year.

It is evident that the question involved in the use of such rolls is one of very considerable importance, involving large property interests, and closely touching the rights of composers and music publishers. The case was argued with force and ability, orally and upon elaborate briefs.

Without entering into a detailed discussion of the mechanical

construction of such instruments and rolls, it is enough to say that they are what has become familiar to the public in the form of mechanical attachments to pianos, such as the pianola, and the musical rolls consist of perforated sheets, which are passed over ducts connected with the operating parts of the mechanism in such manner that the same are kept sealed until, by means of perforations in the rolls, air pressure is admitted to the ducts which operate the pneumatic devices to sound the notes. This is done with the aid of an operator, upon whose skill and experience the success of the rendition largely depends. As the roll is drawn over the tracker board the notes are sounded as the perforations admit the atmospheric pressure, the perforations having been so arranged that the effect is to produce the melody or tune for which the roll has been cut.

Speaking in a general way, it may be said that these rolls are made in three ways. First. With the score or staff notation before him the arranger, with the aid of a rule or guide and a graduated schedule, marks the position and size of the perforations on a sheet of paper to correspond to the order of notes in the composition. The marked sheet is then passed into the hands of an operator who cuts the apertures, by hand, in the paper. This perforated sheet is inspected and corrected, and when corrected is called "the original." This original is used as a stencil and by passing ink rollers over it a pattern is prepared. The stenciled perforations are then cut, producing the master or templet. The master is placed in the perforating machine and reproductions thereof obtained, which are the perforated rolls in question. Expression marks are separately copied on the perforated music sheets by means of rubber stamps. Second. A perforated music roll made by another manufacturer may be used from which to make a new record. Third. By playing upon a piano to which is attached an automatic recording device producing a perforated matrix from which a perforated music roll may be produced.

It is evident, therefore, that persons skilled in the art can take such pieces of sheet music in staff notation, and by means

of the proper instruments make drawings indicating the perforations, which are afterwards outlined and cut upon the rolls in such wise as to reproduce, with the aid of the other mechanism, the music which is recorded in the copyrighted sheets.

The learned counsel for the parties to this action advance opposing theories as to the nature and extent of the copyright given by statutory laws enacted by Congress for the protection of copyright, and a determination of which is the true one will go far to decide the rights of the parties in this case. On behalf of the appellant it is insisted that it is the intention of the copyright act to protect the intellectual conception which has resulted in the compilation of notes which, when properly played, produces the melody which is the real invention of the composer. It is insisted that this is the thing which Congress intended to protect, and that the protection covers all means of expression of the order of notes which produce the air or melody which the composer has invented.

Music, it is argued, is intended for the ear as writing is for the eye, and that it is the intention of the copyright act to prevent the multiplication of every means of reproducing the music of the composer to the ear.

On the other hand, it is contended that while it is true that copyright statutes are intended to reward mental creations or conceptions, that the extent of this protection is a matter of statutory law, and that it has been extended only to the tangible results of mental conception, and that only the tangible thing is dealt with by the law, and its multiplication or reproduction is all that is protected by the statute.

Before considering the construction of the statute as an independent question the appellee invokes the doctrine of *stare decisis* in its favor, and it is its contention that in all the cases in which this question has been up for judicial consideration it has been held that such mechanical producers of musical tones as are involved in this case have not been considered to be within the protection of the copyright act; and that, if within the power of Congress to extend protection to such subjects,

the uniform holdings have been that it is not intended to include them in the statutory protection given. While it may be that the decisions have not been of that binding character that would enable the appellee to claim the protection of the doctrine of *stare decisis* to the extent of precluding further consideration of the question, it must be admitted that the decisions, so far as brought to our attention in the full discussion had at the bar and upon the briefs, have been uniformly to the effect that these perforated rolls operated in connection with mechanical devices for the production of music are not within the copyright act. It was so held in *Kennedy* v. *McTammany*, 33 Fed. Rep. 584. The decision was written by Judge Colt in the First Circuit; the case was subsequently brought to this court, where it was dismissed for failure to print the record. 145 U. S. 643. In that case the learned judge said:

"I cannot convince myself that these perforated sheets of paper are copies of sheet music within the meaning of the copyright law. They are not made to be addressed to the eye as sheet music, but they form a part of a machine. They are not designed to be used for such purposes as sheet music, nor do they in any sense occupy the same field as sheet music. They are a mechanical invention made for the sole purpose of performing tunes mechanically upon a musical instrument."

Again the matter was given careful consideration in the Court of Appeals of the District of Columbia in an opinion by Justice Shepard (*Stearn* v. *Rosey*, 17 App. D. C. 562), in which that learned justice, speaking for the court, said:

"We cannot regard the reproduction, through the agency of a phonograph, of the sounds of musical instruments playing the music composed and published by the complainants, as the copy or publication of the same within the meaning of the act. The ordinary signification of the words 'copying,' 'publishing,' etc., cannot be stretched to include it.

"It is not pretended that the marking upon waxed cylinders can be made out by the eye or that they can be utilized in any other way than as parts of the mechanism of the phonograph.

"Conveying no meaning, then, to the eye of even an expert musician and wholly incapable of use save in and as a part of a machine specially adapted to make them give up the records which they contain, these prepared waxed cylinders can neither substitute the copyrighted sheets of music nor serve any purpose which is within their scope. In these respects there would seem to be no substantial difference between them and the metal cylinder of the old and familiar music box, and this, though in use at and before the passage of the copyright act, has not been regarded as infringing upon the copyrights of authors and publishers."

The question came before the English courts in *Boosey* v. *Whight* (1899, 1 Ch. 836; 80 L. T. R. 561), and it was there held that these perforated rolls did not infringe the English copyright act protecting sheets of music. Upon appeal Lindley, Master of the Rolls, used this pertinent language (1900, 1 Ch. 122; 81 L. T. R. 265):

"The plaintiffs are entitled to copyright in three sheets of music. What does this mean? It means that they have the exclusive right of printing or otherwise multiplying copies of those sheets of music, *i. e.*, of the bars, notes, and other printed words and signs on these sheets. But the plaintiffs have no exclusive right to the production of the sounds indicated by or on those sheets of music; nor to the performance in private of the music indicated by such sheets; nor to any mechanism for the production of such sounds or music.

"The plaintiff's rights are not infringed except by an unauthorized copy of their sheets of music. We need not trouble ourselves about authority; no question turning on the meaning of that expression has to be considered in this case. The only question we have to consider is whether the defendants have copied the plaintiff's sheets of music.

"The defendants have taken those sheets of music and have prepared from them sheets of paper with perforations in them, and these perforated sheets, when put into and used with properly constructed machines or instruments, will produce or

enable the machines or instruments to produce the music in-
dicated on the plaintiff's sheets. In this sense the defendant's
perforated rolls have been copies from the plaintiff's sheets.

"But is this the kind of copying which is prohibited by the
copyright act; or rather is the perforated sheet made as above
mentioned a copy of the sheet of music from which it is made?
Is it a copy at all? Is it a copy within the meaning of the copy-
right act? A sheet of music is treated in the copyright act as
if it were a book or sheet of letter press. Any mode of copy-
ing such a thing, whether by printing, writing, photography, or
by some other method not yet invented, would no doubt be
copying. So, perhaps, might a perforated sheet of paper to
be sung or played from in the same way as sheets of music are
sung or played from. But to play an instrument from a sheet
of music which appears to the eye is one thing; to play an in-
strument with a perforated sheet which itself forms part of
the mechanism which produces the music is quite another
thing."

Since these cases were decided Congress has repeatedly had
occasion to amend the copyright law. The English cases, the
decision of the District Court of Appeals, and Judge Colt's de-
cision must have been well known to the members of Congress;
and although the manufacture of mechanical musical instru-
ments had not grown to the proportions which they have since
attained they were well known, and the omission of Congress
to specifically legislate concerning them might well be taken to
be an acquiescence in the judicial construction given to the
copyright laws.

This country was not a party to the Berne convention of
1886, concerning international copyright, in which it was spe-
cifically provided:

"It is understood that the manufacture and sale of instru-
ments serving to reproduce mechanically the airs of music
borrowed from the private domain are not considered as con-
stituting musical infringement."

But the proceedings of this convention were doubtless well

known to Congress. After the Berne convention the act of March 3, 1891, was passed. Section 13 of that act provides (3 U. S. Comp. Stat. 3417):

"SEC. 13. That this act shall only apply to a citizen or subject of a foreign state or nation when such foreign state or nation permits to citizens of the United States of America the benefits of copyright on substantially the same basis as to its own citizens; and when such foreign state or nation is a party to an international agreement which provides for reciprocity in the granting of copyright, by the terms of which agreement the United States of America may, at its pleasure, become a party to such agreement. The existence of either of the conditions aforesaid shall be determined by the President of the United States by proclamation made from time to time as the purposes of this act may require."

By proclamation of the President July 1, 1891, the benefit of the act was given to the citizens of Belgium, France, British possessions and Sweden, which countries permitted the citizens of the United States to have the benefit of copyright on the same basis as the citizens of those countries. On April 30, 1892, the German Empire was included. On October 31, 1892, a similar proclamation was made as to Italy. These countries were all parties to the Berne convention.

It could not have been the intention of Congress to give to foreign citizens and composers advantages in our country which according to that convention were to be denied to our citizens abroad.

In the last analysis this case turns upon the construction of a statute, for it is perfectly well settled that the protection given to copyrights in this country is wholly statutory. *Wheaton* v. *Peters*, 8 Pet. 590; *Banks* v. *Manchester*, 128 U. S. 244, 253; *Thompson* v. *Hubbard*, 131 U. S. 123, 151; *American Tobacco Company* v. *Werckmeister*, 207 U. S. 284.

Musical compositions have been the subject of copyright protection since the statute of February 3, 1831, c. , 4 Stat. 436, and laws have been passed including them since that time.

When we turn to the consideration of the act it seems evident that Congress has dealt with the tangible thing, a copy of which is required to be filed with the Librarian of Congress, and wherever the words are used (copy or copies) they seem to refer to the term in its ordinary sense of indicating reproduction or duplication of the original. Section 4956 (3 U. S. Comp. Stat. 3407) provides that two copies of a book, map, chart or musical composition, etc., shall be delivered at the office of the Librarian of Congress. Notice of copyright must be inserted in the several copies of every edition published, if a book, or if a musical composition, etc., upon some visible portion thereof. Section 4962, Copyright Act, 3 U. S. Comp. Stat. 3411. Section 4965 (3 U. S. Comp. Stat. 3414) provides in part that the infringer "shall forfeit every sheet thereof, and one dollar for every sheet of the same found in his possession," etc., evidently referring to musical compositions in sheets. Throughout the act it is apparent that Congress has dealt with the concrete and not with an abstract right of property in ideas or mental conceptions.

We cannot perceive that the amendment of § 4966 by the act of January 6, 1897, c. 4, 29 Stat. 481 (3 U. S. Comp. Stat. 3415), providing a penalty for any person publicly performing or representing any dramatic or musical composition for which a copyright has been obtained, can have the effect of enlarging the meaning of the previous sections of the act which were not changed by the amendment. The purpose of the amendment evidently was to put musical compositions on the footing of dramatic compositions so as to prohibit their public performance. There is no complaint in this case of the public performance of copyrighted music; nor is the question involved whether the manufacturers of such perforated music rolls when sold for use in public performance might be held as contributing infringers. This amendment was evidently passed for the specific purpose referred to, and is entitled to little consideration in construing the meaning of the terms of the act theretofore in force.

What is meant by a copy? We have already referred to the common understanding of it as a reproduction or duplication of a thing. A definition was given by Bailey, J., in *West* v. *Francis*, 5 B. & A. 743, quoted with approval in *Boosey* v. *Whight, supra.* He said: "A copy is that which comes so near to the original as to give to every person seeing it the idea created by the original."

Various definitions have been given by the experts called in the case. The one which most commends itself to our judgment is perhaps as clear as can be made, and defines a copy of a musical composition to be "a written or printed record of it in intelligible notation." It may be true that in a broad sense a mechanical instrument which reproduces a tune copies it; but this is a strained and artificial meaning. When the combination of musical sounds is reproduced to the ear it is the original tune as conceived by the author which is heard. These musical tones are not a copy which appeals to the eye. In no sense can musical sounds which reach us through the sense of hearing be said to be copies as that term is generally understood, and as we believe it was intended to be understood in the statutes under consideration. A musical composition is an intellectual creation which first exists in the mind of the composer; he may play it for the first time upon an instrument. It is not susceptible of being copied until it has been put in a form which others can see and read. The statute has not provided for the protection of the intellectual conception apart from the thing produced, however meritorious such conception may be, but has provided for the making and filing of a tangible thing, against the publication and duplication of which it is the purpose of the statute to protect the composer.

Also it may be noted in this connection that if the broad construction of publishing and copying contended for by the appellants is to be given to this statute it would seem equally applicable to the cylinder of a music box, with its mechanical arrangement for the reproduction of melodious sounds, or the record of the graphophone, or to the pipe organ operated by

devices similar to those in use in the pianola. All these instruments were well known when these various copyright acts were passed. Can it be that it was the intention of Congress to permit them to be held as infringements and suppressed by injunctions?

After all, what is the perforated roll? The fact is clearly established in the testimony in this case that even those skilled in the making of these rolls are unable to read them as musical compositions, as those in staff notation are read by the performer. It is true that there is some testimony to the effect that great skill and patience might enable the operator to read his record as he could a piece of music written in staff notation. But the weight of the testimony is emphatically the other way, and they are not intended to be read as an ordinary piece of sheet music, which to those skilled in the art conveys, by reading, in playing or singing, definite impressions of the melody.

These perforated rolls are parts of a machine which, when duly applied and properly operated in connection with the mechanism to which they are adapted, produce musical tones in harmonious combination. But we cannot think that they are copies within the meaning of the copyright act.

It may be true that the use of these perforated rolls, in the absence of statutory protection, enables the manufacturers thereof to enjoy the use of musical compositions for which they pay no value. But such considerations properly address themselves to the legislative and not to the judicial branch of the Government. As the act of Congress now stands we believe it does not include these records as copies or publications of the copyrighted music involved in these cases.

The decrees of the Circuit Court of Appeals are

*Affirmed.*

Mr. Justice Holmes, concurring specially.

In view of the facts and opinions in this country and abroad to which my brother Day has called attention I do not feel

justified in dissenting from the judgment of the court, but the result is to give to copyright less scope than its rational significance and the ground on which it is granted seem to me to demand. Therefore I desire to add a few words to what he has said.

The notion of property starts, I suppose, from confirmed possession of a tangible object and consists in the right to exclude others from interference with the more or less free doing with it as one wills. But in copyright property has reached a more abstract expression. The right to exclude is not directed to an object in possession or owned, but is *in vacuo,* so to speak. It restrains the spontaneity of men where but for it there would be nothing of any kind to hinder their doing as they saw fit. It is a prohibition of conduct remote from the persons or tangibles of the party having the right. It may be infringed a thousand miles from the owner and without his ever becoming aware of the wrong. It is a right which could not be recognized or endured for more than a limited time, and therefore, I may remark in passing, it is one which hardly can be conceived except as a product of statute, as the authorities now agree.

The ground of this extraordinary right is that the person to whom it is given has invented some new collocation of visible or audible points,—of lines, colors, sounds, or words. The restraint is directed against reproducing this collocation, although but for the invention and the statute any one would be free to combine the contents of the dictionary, the elements of the spectrum, or the notes of the gamut in any way that he had the wit to devise. The restriction is confined to the specific form, to the collocation devised, of course, but one would expect that, if it was to be protected at all, that collocation would be protected according to what was its essence. One would expect the protection to be coextensive not only with the invention, which, though free to all, only one had the ability to achieve, but with the possibility of reproducing the result which gives to the invention its meaning and worth. A

musical composition is a rational collocation of sounds apart
from concepts, reduced to a tangible expression from which
the collocation can be reproduced either with or without con-
tinuous human intervention. On principle anything that me-
chanically reproduces that collocation of sounds ought to be
held a copy, or if the statute is too narrow ought to be made
so by a further act, except so far as some extraneous considera-
tion of policy may oppose. What license may be implied from
a sale of the copyrighted article is a different and harder ques-
tion, but I leave it untouched, as license is not relied upon as
a ground for the judgment of the court.