Samuel SHIPKOVITZ

v.

The UNITED STATES.

No. 360–82C.

United States Claims Court.

Feb. 8, 1983.

Order Amending Discovery Order
March 24, 1983.

Samuel Shipkovitz, pro se.

Thomas J. Byrnes, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

SETO, Judge.

On November 24, 1982, plaintiff filed a Motion to Compel Discovery and a Request for Production of Documents, to which defendant filed an objection on December 8. On December 15, plaintiff filed his response to the objection. In view of the wide scope of plaintiff's discovery request and the complexity of plaintiff's three counts, count I being a claim for copyright infringement, count II being a claim for breach of an employment contract, and count III being a claim for taking of proprietary rights, this court scheduled a discovery conference to illuminate the issues raised in plaintiff's motion and to expeditiously resolve the issues raised in the request for production of documents. Pursuant to the January 3, 1983, order, the discovery conference was convened on February 3.

The expressed intention of any discovery conference is to establish guidelines which limit discovery to all relevant material, but which exclude any irrelevant material. Count I of plaintiff's complaint asserts a copyright infringement claim against the Government, thus the purpose of the conference was to delineate the parameters in which plaintiff would be allowed to discover material relevant to his copyright claim. As to the other two counts of the complaint, counts II and III, defendant asserts that they are appropriate for summary judgment and thus, has agreed to file a motion for summary judgment within 60 days after receiving plaintiff's earlier-promised signed deposition.

■ Rule 26(b)(1) of the rules of this court, replicating Rule 26(b)(1), Fed.R. Civ.P., makes discoverable "any matter not privileged, which is relevant to the subject matter involved in the pending action." By virtue of this language the single initial hurdle that must be cleared by the proponent of discovery is a demonstration of the relevance of the information sought to the issues involved in the case. Relevant material may subsequently be protected from discovery by proper claims of privilege, but the initial question is that of relevance. *Pierson v. United States,* 428 F.Supp. 384, 390 (D.Del.1977).

In plaintiff's November 24, 1982, Motion to Compel Discovery, he requested production of all documents in 11 categories which involve dozens of persons, institutions, and subjects.

Request No. 1 asks for all documents and things (which are defined in all-encompassing terms) received by or sent to any part of the Department of Health and Human Services (HHS) including the Food and Drug Administration (FDA), the National Institutes of Health (NIH), the National Library of Medicine (NLM) and the Public Health Service (PHS) which contain, relate or refer to numerous individuals, organizations, or subjects. Most of the organizations, individuals, or subjects listed are not referred to in plaintiff's complaint, and no effort is made to show how such individuals, organizations, or subjects relate to the subject matter of plaintiff's complaint. Requests Nos. 2, 3 and 4 are similar, and all refer back to Request No. 1. In fact, they appear to be duplicative of Request No. 1. Requests Nos. 5 and 6 are concerned with specific grants awarded by either the FDA or the PHS and request all documents and things reflecting, referring to, relating to, containing, or applying for information about these grants and about the persons or organizations involved. Requests Nos. 7 and 8 ask for information about the personal finances and relationships of specific individuals and any individual having decision-making power over the subject matter of the preceding six requests. Requests Nos. 9 and 10, in addition to asking for all documents and things referring to, relating to, regarding, containing or applying to plaintiff, his work, and his visits to the FDA, ask for all documents and things prepared by any part or employee of the defendant which refers to, relates to, regards, contains or applies to any grant or contract to a named individual not in the employment of defendant and two private organizations. Request No. 11 seeks information that is publicly available. Request No. 12 is a catchall asking for the identity of all

persons having knowledge of the facts contained in, referred to, regarded, or reflected in the preceding requests.

Defendant objected on the grounds that plaintiff utterly failed to show any relevance for any of the documents specified, and, given the extreme burden of plaintiff's request, that they were unduly burdensome and oppressive.

The issue in this case is whether or not plaintiff's requests regarding his 11 categories are relevant to plaintiff's first count.[1] In resolving and determining the correct parameters regarding the relevance of plaintiff's requests in its Motion to Compel Discovery, the court is required to determine the relevancy of plaintiff's request in regard to count I, mindful of the following factors. Insofar as plaintiff requests discovery of all relevant documents in the above categories created or made on or after December 1, 1972, his request must fail.

█ Plaintiff's request for production of documents on or after December 1, 1972, is statutorily barred under 28 U.S.C. § 1498(b), *e.g.:*

> (b) Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive remedy of the owner of such copyright shall be by action against the United States in the U.S.

Claims Court for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 101(b) of title 17, United States Code: *Provided,* That a Government employee shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government: *Provided, however,* That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used: *And provided further,* That before such action against the United States has been instituted the appropriate corporation owned or controlled by the United States or the head of the appropriate department or agency of the Government, as the case may be, is authorized to enter into an agreement with the copyright owner in full settlement and compromise for the damages accruing to him by reason of such infringement and to settle the claim administratively out of available appropriations.

Except as otherwise provided by law, *no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint* or counterclaim for infringement in the ac-

---

1. At the discovery conference on February 3, 1983, plaintiff and defendant agreed to dispose of counts II and III through summary judgment motions. Therefore, the parameters of relevance addressed by the court in this order are directed only to count I, the crux of which regard the rights which accrued to plaintiff pursuant to his copyright registration of his Ph.D. thesis at the University of Pittsburgh. Plaintiff alleges in his first count, that "[a]fter said date of publication, defendant, through its Department of Health & Human Services (formerly H.E.W.), and more particularly the Bureau of Radiological Health (hereinafter 'Bu-

reau'), Food & Drug Administration, USHHS, including, but not limited to the above named organization of defendant, infringed said copyright of plaintiff by copying, printing, reprinting, publishing, vending, and distributing said work, including representing plaintiff's work as its own, all in violation of plaintiff's rights under Section 1(a) and other sections of the Copyright Law. In addition, defendant has knowingly and intentionally claimed and represented plaintiff's work and work product as its own, even after being given notice of plaintiff's ownership by plaintiff both orally and in writing."

tion, except that the period between the date of receipt of a written claim for compensation by the Department or agency of the Government or corporation owned or controlled by the United States, as the case may be, having authority to settle such claim and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as a part of the three years, unless suit is brought before the last-mentioned date. (Emphasis supplied.)

Thus, section 1498(b) precludes plaintiff from access to any damages accruing more than *three years* prior to the date on which plaintiff filed his complaint with this court. Therefore, discovery will be permitted only with regard to those items sought by plaintiff which manifest a date subsequent to July 1979.

■ Secondly, it is well known in copyright law that copyright registration only affords protection against the manner in which a writing is written, and does not protect the ideas contained therein. *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879); *White-Smith Music Co. v. Apollo Co.,* 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1907); *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (1976); *Franklin Mint Corp. v. Nat. Wildlife Art Exchg.,* 575 F.2d 62, 64 (1978); *Rubin v. Boston Magazine Co.,* 645 F.2d 80, 82 (1981). For example, the United States Supreme Court in *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879), held that a bookkeeping system itself was not copyrightable, but the author's forms for his bookkeeping system were copyrightable. In *Baker,* the Supreme Court stated:

* * * The copyright of the book, if not pirated from other works, would be valid without regard to the novelty, or want of novelty, of its subject-matter. The novelty of the art or thing described or explained has nothing to do with the validity of the copyright. To give to the author of the book an exclusive property in the art described therein, when no exami-

nation of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright. The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government.

The difference between the two things, letters-patent and copyright, may be illustrated by reference to the subjects just enumerated. Take the case of medicines. Certain mixtures are found to be of great value in the healing art. If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the public. If he desires to acquire such exclusive right, he must obtain a patent for the mixture as a new art, manufacutre, or composition of matter. He may copyright his book, if he pleases; but that only secures to him the exclusive right of printing and publishing his book. So of all other inventions or discoveries.

*The copyright of a book on perspective, no matter how many drawings and illustrations it may contain, gives no exclusive right to the modes of drawing described, though they may never have been known or used before.* By publishing the book, without getting a patent for the art, the latter is given to the public.

\* \* \* \* \* \*

The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires. The very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains. *But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy*

*of the book.* (Emphasis supplied.) *Baker v. Selden,* 101 U.S. at 102–03.

 Thus, insofar as plaintiff's discovery seeks *all* documents relating in any way to the plaintiff's Ph.D. dissertation, it must fail. It is a well-known proposition of copyright law, that in order to afford plaintiff the court's imprimatur ruling of copyright infringement, the copying must be of "substantial" proportions of plaintiff's Ph.D. dissertation. For guidelines of how the courts have interpreted the term "substantial," *see Nimmer on Copyrights,* §§ 143.1, 143.11, 143.12, and 143.4, pp. 619–634. Therefore, plaintiff may seek discovery only as to those documents which manifest "substantial" similarity to plaintiff's Ph.D. thesis.

 Finally, insofar as plaintiff's discovery seeks all documents utilizing his computer program which was promulgated in his Ph.D. dissertation, that request will be granted. Defendant made no objections regarding the relevancy of this request, and the court believes this request to be reasonable.

Having established general limits on plaintiff's discovery, the list of subject areas for which plaintiff has requested discovery, as listed in Paragraph 1 B, of exhibit 1, was amended by plaintiff, to include only the following items:

1. Automated detection of irradiated chromosomes;
2. Samuel Shipkovitz;
3. Automated image processing;
4. Neil Wald in his capacity as director of the Radiation Center of Presbyterian University Hospital/University of Pittsburgh;
5. University of Pittsburgh Graduate School of Public Health;
6. Presbyterian University Hospital, Departments of Radiology and Nuclear Medicine;
7. Pattern recognition of irradiated chromosomes;
8. Automated pattern recognition of irradiated chromosomes;
9. A. Martin Savol;
10. David Tsao; and,
11. Lawrence Davis.

Plaintiff was cautioned that he was entitled to discover documents relating to the above-numerated areas only if those documents were within the realm of the limits as set forth above.

As to the topics contained in subparagraphs 2 through 12 of exhibit 1 of plaintiff's request for discovery, plaintiff shall be entitled to those documents requested in these subparagraphs subject to the same three limitations set forth for paragraph 1, of exhibit 1.

 Therefore, it is hereby ORDERED that:

1. Plaintiff's Request for Documents and Motion for an Order Compelling Discovery, both filed November 24, 1982, is GRANTED IN PART.

 Plaintiff is entitled to discovery of those documents which are within the the parameters set forth in this order.

 Plaintiff is not entitled to his expenses incurred in prosecuting his motion to compel discovery, as defendant's objection thereto was justified in view of the plaintiff's overly broad request for documents. *See* Rule 37(a)(4) of the Claims Court.

2. Plaintiff's request for documents shall be construed as including all computer programs which utilize plaintiff's computer program which he set forth in his Ph.D. dissertation.

3. Plaintiff's discovery is limited as follows:

 (a) Only to documents manifesting events occurring after July 1979.

 (b) Material relating to the "substantial" copying, if any, of plaintiff's Ph.D. dissertation by the defendant.

4. Defendant shall file a motion for partial summary judgment, as to counts II and III of the complaint within 60 days after receiving plaintiff's earlier-promised signed deposition. Pursuant to Rules 56, 83.1, and 83.2(c), plaintiff shall have 28 days after receiving the

motion for summary judgment within which to file his response.

## ORDER AMENDING DISCOVERY ORDER

Having considered plaintiff's Motion for Reconsideration and Clarification filed February 17, 1983, and defendant having interposed no objection; and in view of defendant's Motion to Dismiss and Motion for Summary Judgment both filed March 11, 1983, plaintiff's motion shall be GRANTED IN PART for the following reasons.

Plaintiff is now seeking clarification and reconsideration of this court's order filed February 8, 1983, which delineated the scope of discovery available to plaintiff regarding count I, his copyright claim, and which stayed all discovery concerning counts II and III of the complaint, pending the disposition of defendant's motion to dismiss those counts. Specifically, plaintiff requests that he be allowed to conduct discovery immediately on counts II and III and that the scope of discovery on count I be enlarged and clarified.

As to count I, plaintiff shall be allowed to expand his discovery request slightly. Although the court's February 8, order limited discovery only to documents manifesting events occurring after July, 1979, i.e., within the 3-year statute of limitations set forth in 28 U.S.C. § 1498(b), this court appreciates the relevancy of documents reflecting events occurring within the 1979 fiscal year. Therefore, plaintiff shall be allowed to discover documents generated after October 1, 1978.

Moreover as to count I, plaintiff seeks to discover documents within the Government's possession relating to Neil Wald. Mr. Wald was the plaintiff's supervisor at the Radiation Center of Presbyterian University Hospital/University of Pittsburgh. This court's February order limited discovery to Neil Wald in *his capacity as director of the Radiation Center of Presbyterian University Hospital/University of Pittsburgh.* Since all discovery on count I is limited to "[M]aterial relating to the 'substantial' copying, if any, of plaintiff's Ph.D.

dissertation by the defendant," there is ostensibly no danger that documents disclosing information personal to Mr. Wald will be produced. Therefore, the February order shall be amended to permit plaintiff to discover documents relating to Mr. Wald, generally, rather than only in his capacity as director of the Radiation Center. Plaintiff shall also be allowed to discover documents regarding Mr. Wald's associate, Mr. John M. Herron.

The court's February order limited discovery on plaintiff's copyright claim, count I, to material relating to "substantial" copying of plaintiff's Ph.D. dissertation. Plaintiff objects to the substantive standard of "substantial copying", and requests the court to impose an objective standard. However, plaintiff does not proffer any objective standard by which to measure "substantial copying" nor does this court know of any. The court's February order set forth the accepted definitions of "substantial copying" at length. Moreover, there appears little judicial dispute as to the substantive standard to determine copyright infringement. *See* the court's February 8, 1983, order. Plaintiff has not adduced any evidence which implicates that defendant, in any way, deceived plaintiff or exercised bad faith during these proceedings. Thus, defendant shall continue to make determinations of "substantial copying" pursuant to the substantive standard previously set forth by this court.

Finally as to counts II and III, defendant has submitted a motion to dismiss those counts and a motion for summary judgment as to all three counts. In order to avoid prodigal waste of judicial resources, discovery as to counts II and III shall be stayed, pending the disposition of defendant's dispositive motions.

Therefore, it is hereby ORDERED that:

(1) The list of subject areas to which plaintiff is entitled to obtain discovery is amended as follows:

(a) Item 4, page 404 of the order shall now state simply "Neil Wald."

(b) The addition of item 12, which reads "John M. Herron."

(2) Item 3(a), page 404 of the order, shall be changed to:

"Only to documents relevant to copyright infringement that are effective from October 1, 1978, to present."

