BYRON D. SHULTZ and Others, Appellants, *v.* MANUFACTURERS AND TRADERS TRUST COMPANY, Respondent.

(Consolidated Action.)

Fourth Department, November 18, 1936.

*Albrecht, Maguire & Mills* [*C. DeForest Cummings* of counsel], for the appellants.

*Locke, Babcock, Hollister & Brown* [*Noel S. Symons; Louis L. Babcock* and *Raymond C. Vaughan* with him on the brief, of counsel], for the respondent.

THOMPSON, J. The plaintiffs were stockholders of Houde Engineering Corporation. Defendant is a bank. Each plaintiff started an action against defendant, asking damages for breach of a contract of agency or brokerage. The actions were consolidated and tried. At the close of plaintiffs' proofs, the court granted defendant's motion for a nonsuit, and dismissal of the complaints upon the merits.

It is the claim of plaintiffs that defendant, acting through a partnership known as Krauss & Company, composed of various of its junior officers, and which, when nominated by the bank, handled transactions of the sort for customers of the bank and the bank itself, brought about the sale of the stock of the Houde Corporation as agent or broker for the stockholders for the sum of $6,000,000, and thereby made for the bank a secret profit of $2,000,000; the bank having deceived the Houde stockholders into believing that the sale was for the sum of $4,000,000.

In support of their cause of action, plaintiffs were permitted to put in evidence the following instrument, executed by several, but not all, of them.

"*September* 26, 1928.

" In consideration of $1.00, receipt of which is hereby acknowledged, we the undersigned stockholders of the Houde Engineering Corporation, hereby give to Krauss & Company, for a period of thirty (30) days from the date hereof, the right to purchase all the stock of the Houde Engineering Corporation at a price of ($4,000,000) Four Million Dollars in total. This option can only be exercised by the payment of cash before its expiration.

" It is understood that the net assets of the Houde Engineering Corporation, when, as, and if this option shall be exercised will be at least equivalent to the position as set forth in its balance sheet dated August 31, 1928, and any accrual in these net assets occurring since the close of business August 31, 1928, shall adhere to the vendors in this option.

"Inasmuch as Krauss & Company will act as a broker in this transaction, it is also understood that in the event of the sale of said stock being consummated, Krauss & Company will be entitled to a commission from the purchase price of 3%.

"If stockholders owning not more than a total of 265 shares of said stock, who do not sign this option, refuse to join in the sale at the price aforesaid, there shall be a reduction made in the purchase price of $1,640.19 per share for each share of said stock which the undersigned shall be unable to deliver to the purchasers.

"It is understood that the name of A. B. Shultz is signed hereto in pursuance of verbal authority given by him to negotiate a sale of said stock."

And a letter written by Krauss & Company to the signers of the above instrument, dated October 11, 1928, a copy of which follows:

"DEAR SIRS: Referring to the option dated September 26, 1928, which you have given us for the purchase of all of the stock of Houdaille Engineering Corporation at a price of $4,000,000, we beg to advise that we have secured as a purchaser the New York Car Wheel Company of this city, which has agreed to purchase said stock upon the terms of our option, and has made available in our hands the sum of $4,000,000 therefor.

"We accordingly notify you that we elect to exercise our option as of this date, and tender you payment in full upon delivery to us of all the stock of the Houdaille Engineering Corporation duly endorsed for transfer, less a possible maximum of 265 shares, all as provided in our option. We shall be glad to suit your convenience as to time and place of delivery, and payment prior to October 25th, and suggest that you promptly arrange with us for an early closing.

"Yours very truly,
"KRAUSS & CO.
"By T. CANTWELL."

The receipts prepared by defendant and signed by the several stockholders for the amounts of money paid to them, respectively, all of which are in practically the same form, were also received in evidence. One of them reads as follows:

"October 24th, 1928.

"Received of New York Car Wheel Company, by Fred B. Cooley, the sum of Two Hundred Nineteen Thousand Eight Hundred Ten and 73/100 Dollars ($219,810.73), in full payment for one hundred thirty-one and one-quarter (131¼) shares of the Capital Stock of Houde Engineering Corporation, sold and delivered

under the terms of an option dated September 26, 1928, given to Krauss & Co., the three per cent (3%) commission allotted to the latter having been deducted from the sale price."

Very largely based upon the first paragraph of the instrument, defendant at trial claimed that it was an option for the sale of the signers' stock in the Houde Corporation to defendant, so that all previous negotiations and communications between the parties were merged in it, and testimony as to them was incompetent; the court so ruled.

Contending that paragraph 3 by its terms related back to, and read itself into, paragraph 1, plaintiffs claimed that the instrument was but the usual memorandum of listing, which granted and defined the authority of defendant, as a broker, to sell the stock owned by the persons signing it; or, otherwise, that the instrument was ambiguous. In any event, so plaintiffs averred, testimony of the facts and circumstances surrounding the making and execution of the instrument, including prior preliminary negotiations and communications of the parties, were admissible in evidence upon the question of the intent of the parties plaintiff in signing and delivering it, and the defendant in accepting and acting upon it.

Gathered from the pleadings, the bill of particulars, the testimony and statements of the court and counsel on the trial, we find that plaintiffs further claim that the surrender of all the stock of the corporation was effected upon the terms of the instrument and the letter, the shares being delivered to the defendant, ostensibly, for the New York Car Wheel Company, and the money for them being paid by checks, aggregating the sum of $4,000,000, plus accruals and less the three per cent commission provided in the instrument. It appears that these checks were signed by one Fred B. Cooley, a director of defendant, who purported to act for the New York Car Wheel Company, and that in substitution for the various certificates, a single certificate for the total number of shares of stock surrendered by the plaintiffs, and all the other shareholders, was issued in the name of the said Fred B. Cooley. It is asserted by plaintiffs that in furtherance of its already adopted plan, defendant formed a syndicate in which it allotted participations to itself, a subsidiary and to certain of its executive officers, directors and to others; that following this defendant forwarded the certificate of shares of stock issued to the said Fred B. Cooley to a correspondent bank in Detroit, and received the sum of $6,000,000 in payment therefor. The complaints allege, respectively, the amount of the damages suffered by each plaintiff because of defendant's breach of its duty, and ask judgments therefor.

The court rejected plaintiffs' offers of testimony in support of their various claims upon the ground that events before the execution of the instrument were incompetent, because it superseded everything that had transpired prior to and contemporaneous with its execution. It excluded the testimony of facts and circumstances occurring after the execution of the instrument and the transfer of the stock to Cooley, upon the ground that the contract made out by the instrument being one of sale and not a brokerage contract, testimony of the resale of the stock by defendant subsequent to the actual delivery of the shares of stock, and receipt by the shareholders of the purchase price of their proportionate share of the sum of $4,000,000, and accruals, less the three per cent commission, which was the sum named in the instrument, was incompetent and of no concern to the plaintiffs, there being no relationship of principal and agent, consequently no trust or fiduciary relationship.

We think the trial court erred in the rejection of testimony of the circumstances surrounding the making of the integration. Whether or not the instrument is ambiguous, this testimony is competent upon the question of the intent of the parties plaintiffs and defendant in its execution and delivery.

It is fundamental that it is the things upon which the minds of the parties were at one as demonstrated by the language used and the circumstances surrounding its use that govern in the interpretation of written agreements. "Words always need interpretation." (4 Wigmore on Evidence, § 2470, p. 3499.) "Words must be translated into things and facts." (HOLMES, J., in *Doherty* v. *Hill*, 144 Mass. 465, 468; 11 N. E. 581, 583.) " ' The letter killeth, but the spirit giveth life.' (2 Cor. 3:6.) " (*Heller* v. *Pope*, 250 N. Y. 132, 135, POUND, J.) Words are but the casing of the thought they are employed to express. Their true meaning can ofttimes only be ascertained by consulting the circumstances, the time and the occasion of their use, the usual business of the respective parties, the course of dealings between them, their situation at the time, the objects sought to be accomplished by the transaction, including negotiations and communications connected with the engagement they sought to enter into. This does not mean that oral testimony can be admitted to contradict the clear and unequivocal terms of a writing, nor does it mean that a party may be heard to testify that he did not intend by his written contract to agree to one of its covenants, the meaning of which is clear and unequivocal. In every case the meaning that would be attached to a written contract by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing is a proper subject of inquiry upon which all

the circumstances accompanying the transaction may be taken into consideration. Under the provisions of section 230 of the Restatement of the Law of Contracts, the circumstances prior to and contemporaneous with the making of the written contract are to be considered in arriving at the meaning that should be attached to it. For this purpose agreements prior to or contemporaneous with the integration are admissible in evidence. (Restatement, § 238 [a]; 15 Cornell Law Quarterly, Supplement, pp. 112, 113.) The court will place itself in the position the parties occupied at the time the contract was made, and this even though upon its face the agreement is free from ambiguity. For such purpose it is permissible to consider the situation of the parties, and the accompanying circumstances at the time the contract was entered into " not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement." (Restatement, Contracts, § 235, comment on clause [d], ¶ e, p. 324.)

" The circumstances under which a writing was made may always be shown. The question the court is seeking to answer is the meaning of the writing at the time and place when the contract was made; and all the surrounding circumstances at that time necessarily throw light upon the meaning of the contract." (Williston on Contracts. [Rev. ed.], § 618. See, also, Williston on Contracts [Rev. ed.], § 629.)

" ' And even where the writing is not ambiguous on its face, the circumstances under which the parties contract may be looked at * * * to indicate the proper choice of possible meanings; and the common knowledge and the understanding of the parties * * * is sometimes such a circumstance.' " (*Rasmussen* v. *New York Life Ins. Co.*, 267 N. Y. 129, 132.)

A new trial of this action should, therefore, be had to the end that the situation of the parties and the circumstances attendant upon the making of their agreement may be given in evidence so that the real intention of the parties to the transaction may be ascertained. Whether or not, when these proofs have been produced, it shall appear that the question of the meaning of the instrument should be determined by the court as a matter of law, or whether questions of facts may be developed which should be submitted to the jury, cannot now be said. If the court shall then conclude as matter of law that the relationship entered into by the parties was that of principal and agent, or that the question should be submitted to the jury, testimony of all the facts in connection with defendant's disposition of the stock after it had passed into its hands, will then become competent upon the questions of the

breach of the contract as claimed by plaintiffs, and their damages. It follows that in case the court shall determine as matter of law, or the jury shall find, that the agreement which the parties reached through the instrument was for an option of sale, the testimony of the resale of the stock will have no validity. In the light of the disposition of the case that we are about to make, we find it unnecessary to consider or discuss various other questions raised by both appellants and respondent.

The judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

All concur, SEARS, P. J., EDGCOMB and LEWIS, JJ., in result on the ground that the instrument dated September 26, 1928, is ambiguous and that, therefore, the evidence excluded was admissible to aid in resolving the ambiguity. For this reason it is not necessary, in their opinion, to determine whether or not the evidence would be admissible to explain the contract, were it deemed unambiguous; except CROSBY, J., who dissents and votes for affirmance. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellants to abide the event.