## EDWARD B. MARKS MUSIC CORPORATION v. FOULLON et al.

### No. 102, Docket 21140.

United States Court of Appeals
Second Circuit.

Jan. 4, 1949.

Arthur E. Garmaize, of New York City, for appellant.

Benedict A. Leerburger, and Dannenberg, Hazen & Lake, both of New York City, for Bard Record Co., Inc.

Joseph R. Miller, of New York City, for defendants Seva Foullon and United Masters.

Sidney Wm. Wattenberg, John Schulman and William Klein, II, all of New York City, amici curiae.

Before L. HAND, CHASE and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, dismissing a complaint in two counts: the first, for infringing the copyright of a Spanish dance song, entitled "Malaguena," by an unauthorized "arrangement"; the second, for making phonograph records of the "arrangement" and selling them without filing the notice which § 25(e) of the Copyright Act, 17 U.S.C.A. § 25(e), requires of those who would avail themselves of the compulsory license given by § 1(e), 17 U.S.C.A. § 1(e). The facts, which were all undisputed, were as follows. The plaintiff's assignor became the owner of a copyright of the words and music of the song, used it to make phonograph records, and in 1931 filed the notice required by § 1(e) of an owner who so uses the composition. The defendant, Foullon, had organized the defendant, United Masters, and was its president and one of its shareholders; and at some time before May 8, 1946 that company had made an "arrangement" of the plaintiff's song for a well-known group of performers. It is the making of this "arrangement" which is the infringement charged in the first count. On May 8 United Masters wrote to the plaintiff, declaring that it planned to make—"press"—phonograph records of the group's performance—naming them—and wished to get "copyright clearance" upon "Malaguena" and another song. The plaintiff agreed as to "Malaguena," and enclosed and executed what it called its "Mechanical License agreement," which United Masters in its turn also executed. This "License" gave to United Masters the right "to use the said musical composition * * * in the manufacture of its sound records in any form whatsoever," and in return United Masters agreed to pay two cents for each record, and to make "statements of account" and payment

of the royalties as § 1(e) of the Copyright Act required. The "License" ended with the stipulation that the song should "not be used in connection with a musical medley for band or orchestra, or any other medley." United Masters had already made an acetate record of a performance by the group of its "arrangement"; and, either before or after, it coated this record with copper to form a matrix, and from the matrix made two "stampers," which after May 9 it sent to the Bard Record Company to "press": i.e., to produce those shellac records, which it delivered to United Masters. It is the manufacture of these records which is the infringement charged in the second count. United Masters never paid the agreed royalty, or filed any statements of account as it had agreed; and it is now insolvent. The judge dismissed the first count against United Masters without costs, but awarded against it on the second count a royalty of six cents a record, together with costs and attorneys' fees under § 1(e). He dismissed the complaint against Foullon without costs or allowance; and against the Bard Company without costs but with an allowance of $500 for attorneys' fees. Only the plaintiff has appealed.

The plaintiff's position is that the "Mechanical License agreement" must be taken, not as a contract or consensual license substituted for the compulsory license of § 1(e), but only as a recognition—a mere acknowledgment, as it were—that § 1(e) and § 25(e) did in fact govern the parties' rights and obligations. Turning to these sections, the plaintiff then argues that, although they gave United Masters a compulsory license, which allowed it to make records, those were only records of the copyrighted composition as it was, and did not authorize any "arrangement." The "arrangement" for the group of performers was therefore itself an infringement under § 1(e), and the manufacture of the records was a second infringement. In both aspects United Masters exposed itself to the remedies provided in § 25 as a tortfeasor. Foullon and the Bard Company were equally liable as contributors to both torts, and, since United Masters had not paid the prescribed royalties, it was also liable for triple damages under § 1(e).

Section 1(e) gives only a limited protection to musical compositions against reproduction by phonographic records; and evinces that unfriendliness towards extending the copyright of musical compositions to mechanical reproduction, which goes back to White-Smith Music Publishing Co. v. Apollo Company.[1] This has apparently become embedded in the very foundation of the subject; for the several efforts which have been made to persuade Congress to be less meagre in relief have failed. Thus, it still remains true that any owner, who himself so uses his composition, or who even consents to such use by others, gives a license to all at a royalty of two cents. Any one, who takes advantage of the license, must, however, make monthly statements of his sales, if the owner demands it, and monthly payments of his royalties before the twentieth day of the month after they are made. Moreover, § 1(e) allows the judge to triple the royalties against him if he defaults in his payments; and § 25(e) does the same if he does not serve upon the owner notice of his intention in advance. These are the measure of the rights and liabilities under the compulsory license. On the other hand, it needs no argument to prove that the parties may substitute for them any other rights and obligations on which they can agree; and § 25(e) so recognizes in declaring "that whenever any person, *in the absence of a license agreement,* intends to use a copyrighted musical composition" by means of records, he shall file the notice we have just mentioned. The question at bar is whether the agreement of May 9, 1946 was "a license agreement."

Clearly it was. The plaintiff had filed the necessary notice on its part, it is true; and United Masters might have made records of the song as it stood at a royalty of two cents, merely by filing its corresponding notice, if in the language of § 25(e) it had been "relying" upon the compulsory license provision of § 1(e). But it did not wish to rely upon that provision; conceivably because it thought that it needed express consent for the "arrangement"

---

[1] 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655, 14 Ann.Cas. 628.

already made, and for the manufacture of the records which it "planned." It had to choose between becoming a bare infringer and thereby exposing itself to the attendant remedies and seeking "a license agreement." By its letter of May 8, it chose the second course, and it got such an agreement, when both parties executed the "Mechanical License agreement." So far as the parties chose to incorporate into this any of the terms of § 1(e), these of course became the measure of their relations like its other terms; but that was only by virtue of the incorporation. Ex proprio vigore the statute fixed nothing between them.

So viewed, the question becomes whether the "License" released United Masters from the consequences of any existing infringement in composing the "arrangement" of "Malaguena" already made, and consented to its future use in manufacturing records. Even from within the four corners of the "License" it is plain that it did both. When the licensor excepted from the licensee's rights any "use" without its consent of the song in a "medley," the only reasonable implication was that other "arrangements" did not need its consent, for a medley is an "arrangement." It is not necessary to depend upon the earlier phrase: "in any form whatsover," which for argument we may suppose to refer only to the means of mechanical reproduction. This conclusion becomes irresistible when we consider the correspondence which went before. The "License" employed the word "use" several times, to describe the licensee's rights, but it always left its meaning of the word undefined. What then was this "use" on which the whole bargain hinged?' Since the "License" had left it at large, the law of New York—to which we must look to learn the meaning of the contract—admits previous negotiations to show that meaning;[2] and if we turn to United Masters' letter of May 8 and the plaintiff's answer, all doubt disappears. For, when United Masters declared that it planned to "press" records for the group of performers, it was at once evident that it must have

an "arrangement" of the song. When, therefore, both parties agreed to the "use" of the song in records, they could have meant only that particular "use."

Hence United Masters not only got a release for composing the "arrangement," and for any steps already taken in the manufacture of the records; but it got a consent to complete that manufacture and to sell the records. That consent also covered the Bard Company's share in the manufacture and its delivery of the finished product to United Masters for sale. The only liability at any time, or of any one, was that of United Masters, and that was contractual. Its failure to fulfill its obligations made it liable to triple damages because of the incorporation of § 1(e) in the "License"; and would have authorized the plaintiff to repudiate the "License." Had the plaintiff done so, any later use of the "arrangement" would have been an infringement; but that would not have made an infringement out of anything done while the "License" was in force.

▮ Obviously the Bard Company is not liable for the royalties which United Masters agreed to pay, for it was not a party to the "License." If it is to be held at all, it must be because the "License" was limited to records wholly made by United Masters; and that would be quite absurd, for the plaintiff had neither information as to who was to make them, or any interest in it. Finally, although it was apparently an oversight for the judge to fail to grant "full costs" to the Bard Company, for § 40, 17 U.S.C.A. § 40, makes them preëmptory, the fact that he did not exercise all his powers does not invalid those which he did. We can conceive no reason for supposing that the two must stand or fall together.

▮ Like any other officer, director or shareholder of a company, Foullon is not liable upon the "License," a contract of United Masters. The Bard Company will be allowed $400 for its attorneys' fees in this court; Foullon will be allowed $100.

Judgment affirmed.

---

[2] Rasmussen v. New York Life Ins. Co., 267 N.Y. 129, 195 N.E. 821; Shultz v. Manufacturers & Traders Trust Co., 249 App.Div. 88, 291 N.Y.S. 117; Restatement of Contracts, § 242.