In the Matter of the Accounting of BELLE C. MEYER et al., as Executors of LILLIE RICHHEIMER, Deceased.

Surrogate's Court, Bronx County, February 19, 1951.

*Archie O. Dawson* and *Harry G. Silleck, Jr.,* for Belle C. Meyer, as executrix of Lillie Richheimer, deceased.

*David S. Elgot* for William Klapp, as executor of Lillie Richheimer, deceased.

*James A. Delehanty,* special guardian for infant remaindermen.

*Edward A. Cunningham* and *Donald T. Mullane* for Joan L. R. Drury and another.

*Dorothy M. Hannigan* for Dorothy C. Visone.

HENDERSON, S. In this accounting proceeding the executors seek to allocate to the amount paid out of the estate to a distributee in compromise of her proceeding to vacate the probate decree, a prorata share of the Federal and New York State estate taxes pursuant to section 124 of the Decedent Estate Law.

The testatrix herein died on the 4th day of July, 1946, leaving as her sole distributee a granddaughter, Joan Drury, who hereafter will be referred to as Joan.

Her last will was admitted to probate on August 26, 1946. Joan, an infant at that time, was represented by a special guardian in the probate proceeding which was uncontested.

The gross estate amounts to approximately $250,000.

After a legacy of $2,000 to her daughter-in-law, the testatrix bequeathed her residuary estate to the executors in trust to pay out of the income the sum of $500 each year to Joan for her life. She also provided that the sum of $180 per year be spent out of the income for the placing of flowers on her burial plot. No provision was made for the disposition of any surplus income over $680 a year. Upon the death of Joan, the remainder was to be distributed in equal shares to the decedent's brother and three sisters, or if any of them be dead at that time, to their issue. The will contains no provision with respect to the payment or apportionment of estate taxes.

During the pendency of the proceedings to judicially settle the account of the executors, Joan, now an adult, instituted a proceeding to vacate the probate decree. Thereafter, a proceeding for the compromise of the issues was initiated in accordance with section 19 of the Decedent Estate Law. On the 14th day of January, 1950, a decree was entered approving a compromise agreement under which Joan renounced all rights to the estate for a consideration of $60,000. Neither the agreement nor the decree approving it contains any reference with respect to the payment or apportionment of the estate taxes.

Prior to the filing of their account and the negotiations of the parties, the executors had paid in addition to the debts, funeral and administration expenses, the sum of $41,675.50 for Federal and New York State estate taxes, leaving on hand according to the account, a principal balance of $217,636.29 later corrected to $218,187.94.

In their supplemental account the executors now seek to allocate the sum of $11,303.44 as the prorata share of the estate taxes payable by Joan with respect to the said sum of $60,000.

Objections to this allocation have been filed by Joan.

Pending a determination of this question, a portion of the amount paid to Joan is held in escrow.

Upon the hearing of this issue, evidence consisting of prior negotiations of the parties was offered by Joan for the purpose of showing that the sum of $60,000 was to be free of any estate tax. This evidence was admitted subject to a motion to strike out. Decision on the motion was reserved by the court.

The motion to strike out is denied. The prior negotiations of the parties are proper subjects of scrutiny by the court (*Schultz* v. *Manufacturers & Traders Trust Co.*, 249 App. Div. 88, 92, 93).

The evidence discloses that as a result of prolonged conferences, two alternative plans for the distribution of the aforesaid fund of $218,187.94 in the hands of the executors were suggested by the special guardian representing certain infant contingent remaindermen. According to both plans, Joan was to receive the flat sum of $60,000. Under the so-called plan number 1, the terms of the will were to remain otherwise effective. Plan number 2 envisaged a commutation of the income rights of the decedent's brother and sisters.

The compromise agreement executed by the parties embodied the scheme outlined in plan number 1.

The mathematical calculations outlined in each plan started with the corrected balance of $218,187.94 in order to determine, how much money would go to Joan and how much money would remain in trust. From this figure there was then deducted certain estimated additional debts, administration expenses and an amount of $7,000 for any additional estate taxes which had not at the time of negotiations for settlement been finally determined. The sum remaining was considered by all parties *as the* source of the payment to Joan, the advances to income account for paying income in advance to the brother and sisters. and the erection of the trust.

After the parties had agreed on the scheme of plan number 1, the first draft of the settlement agreement was drawn by the attorney representing Joan. This draft contained a statement that the sum of $60,000 shall be paid to Joan " tax free ". However, in the final agreement as executed by the parties, the words " tax free " do not appear. It appears from the evidence that these words were deleted at the request of the executors' attorney who stated that the possible liability for tax on the sum should be determined as a matter of law.

From these negotiations and the agreement itself, the court is satisfied that the parties intended that the payment to Joan was not to be subject to the allocation of taxes. The mathematical details appearing in the plans which contain the varying methods of dealing with the estate moneys, do not show any possible increase in the estate assets as a result of a reimbursement to the executors of any estate taxes paid or to be paid. On the contrary, as herein noted, the calculations show that in arriving at the amount available for the respective payments to Joan, the decedent's brother and sisters and the trust, the assets were reduced by an estimated $7,000 for any additional estate taxes.

In the light of these calculations, the use of the words " tax free " with respect to Joan's payment would be redundant. Viewed in the same light, it is difficult for the court to understand the objection of the executors' attorney to the use of these words. However, this act of extreme caution while seemingly inconsistent with the money scheme as outlined in each of the plans, is not sufficient to indicate that a shifting of tax liability was contemplated.

Section 124 of the Decedent Estate Law was enacted to reverse the unjust rule of casting the entire burden of estate taxes upon the residuary legatees and to effect an equitable allocation of such burden, in the absence of a contrary mandate in the will (*Matter of Dettmer*, 179 Misc. 844, 847).

The section provided that the estate taxes " shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues ".

Section 249-m of the Tax Law which controls the meaning to be given to the term " person interested in the estate," defines it as including " all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit

whatsoever with respect to any such property or interest, whether under a will, or intestacy, or by reason of any of the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers as severally enumerated and described in section two hundred forty-nine-r of this article.''

Since it is undisputed that a payment under a compromise does not fit the description of any of the transfers, trusts, etc., enumerated in section 249-r of the Tax Law, the only question is whether Joan has received her payment under a will or by intestacy.

In *Matter of Cook* (187 N. Y. 253, 259) the court in fixing the amount of transfer tax to be paid, determined that sums paid in compromise of will contests must be considered as having been received '' by contract, not under the will or from the testator.''

However, it has also been determined under the Federal income tax statutes that such payments reach the distributee by way of '' inheritance '' (*Lyeth* v. *Hoey,* 305 U. S. 188; *United States* v. *Gavin,* 159 F. 2d 613).

In *Matter of Hastings* (183 Misc. 517) the court in interpreting a New York statute similar in text to the Federal estate tax law, followed the Federal rule that a sum paid out of a residuary estate given to charities in compromise of a will contest must be regarded as moneys inherited.

Since section 124 of the Decedent Estate Law has no counterpart in the Federal statutes, these cases defining the payment in compromise of a will contest as an '' inheritance '' are not authoritative in construing the provisions of this statute.

The court is of the opinion that the reasoning of the *Cook* case (*supra,* pp. 259–260) is applicable to the case at bar, to wit: '' Unless she took as an assignee, she did not take at all.'' Joan did not take under the will nor did she take by intestacy. Therefore, since no obligation to pay a tax was imposed upon Joan by the compromise agreement and since the statute which regulates the allocation of the tax is silent as to payments in compromise of will contests (cf. *Thompson's Estate* v. *Commissioner of Internal Revenue,* 123 F. 2d 816), her objections to the proposed allocation will be sustained.

The objection of the special guardian to the credit claimed by the executors for the penalty paid on the New York estate tax is likewise sustained.

Settle decree.