LEO FEIST, INC., Mills Music, Inc., Shapiro, Bernstein & Co., Inc., DeSylva, Brown & Henderson, Inc. and Peer International Corporation, Plaintiffs,

v.

APOLLO RECORDS, N. Y. CORP., Mastertone Recording Studios, Inc., Gene Sayet, Sidney Feldman, George Albert and Carl Le Bow, Defendants.

No. 62 Civ. 1935.

United States District Court
S. D. New York.
March 27, 1969.

---

**34**

Abeles and Clark, New York City, for plaintiffs, Julian Abeles, Robert C. Osterberg, New York City, of counsel.

Johnson, Zimbalist & Tannen, New York City, for Apollo Records N. Y. Corp., George Albert and Carl Le Bow, Samuel A. Zimbalist, New York City, of counsel.

M. Warren Troob, New York City, for Mastertone Recording Studios, Inc., Gene Sayet and Sidney Feldman.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiffs, Leo Feist, Inc., Mills Music, Inc., Shapiro, Bernstein & Co., Inc., De-Sylva, Brown & Henderson, Inc. and Peer International Corporation, allege infringement of ten musical copyrights by two corporate defendants, Apollo Records N. Y. Corp. and Mastertone Recording Studios, Inc., and by the participating employees or officers of each of these corporate defendants, George Albert and Carl Le Bow of Apollo Records N. Y.

Corp., Gene Sayet and Sidney Feldman of Mastertone Recording Studios, Inc.

This action is based on alleged violations of 17 U.S.C. §§ 1(e), 101(b) and 101(e). Both liability and damages on all copyright infringement claims were submitted for trial to this court without a jury.

## THE CLAIMS

The claims of the parties may be set forth generally as follows:

PLAINTIFFS LEO FEIST, INC., MILLS MUSIC, INC., SHAPIRO, BERNSTEIN & CO., INC., DE SYLVA, BROWN & HENDERSON, INC. AND PEER INTERNATIONAL CORPORATION CLAIM:

1. That plaintiffs are the proprietors of valid and subsisting copyrights in the musical compositions which are the subject of this litigation (see Finding of Fact 3) during all times pertinent to the trial of this case.

2. That defendants Apollo Records N. Y. Corp. (hereinafter called "Apollo"), George Albert, Carl Le Bow, Mastertone Recording Studios, Inc. (hereinafter called "Mastertone"), Gene Sayet and Sidney Feldman made and produced, or contributed to or participated or were concerned in, the making and production of a new and original unauthorized arrangement of each of the plaintiffs' musical works.

3. That defendant Apollo manufactured phonograph records, serving to reproduce mechanically each of said new and original arrangements, without any license or authorization therefor, and thereby separately infringed plaintiffs' respective copyrights in said musical compositions.

4. That all defendants are bound by unqualified admissions that they made and recorded a completely new arrangement of each of plaintiffs' compositions, as extolled by the advertising on the record jacket, and as evidenced by judicial admissions in former pleadings.

5. That the acts of Apollo were perpetrated under the direction of defendants George Albert and Carl Le Bow as executives of said corporate defendant.

6. That the acts of Mastertone were perpetrated under the direction of defendants Gene Sayet and Sidney Feldman, executives and stockholders of said corporate defendant.

7. That each of the defendants is jointly and severally liable for the unauthorized manufacture of phonograph records under Section 101(e) of the Copyright Act, Title 17 U.S.C. (1947) as amended.

8. That separate and apart therefrom, each of the defendants is jointly and severally liable under Section 101(b) of the Copyright Act, Title 17 U.S.C. (1947) as amended, for the making of a completely new and unauthorized arrangement of each of plaintiffs' musical compositions.

### DEFENDANTS APOLLO, GEORGE ALBERT and CARL LE BOW CLAIM:

1. That the defendant Apollo is responsible for the payment of royalties pursuant to Section 101(e) of the Copyright Act, Title 17 U.S.C. (1947) as amended, and has at all times been ready, able and willing to pay the royalties provided pursuant to Section 101(e) plus reasonable damages.

2. That the defendant Apollo is not responsible for a copyright infringement perpetrated by the making of a completely new and unauthorized musical arrangement, in violation of 17 U.S.C. § 101(b), and asserts that the measure of damages proper to this case must be fixed pursuant to 17 U.S.C. § 101(e).

3. That the penalties to be charged against defendant Apollo should be nominal because the unlicensed use was neither wilful nor malicious, because the delay in filing for a compulsory license under 17 U.S.C. §§ 1(e) and 101(e) was in keeping with common industry practice, and because the plaintiffs have proceeded in bad faith.

4. That the defendant, George Albert, did not participate in the production of the record album involved in this litigation and bears no personal legal responsibility therefor.

5. That the defendant Carl Le Bow participated only as an employee of Apollo, without financial or other interests, and, therefore, bears no personal legal responsibility.

### DEFENDANTS MASTERTONE, GENE SAYET AND SIDNEY FELDMAN CLAIM:

1. That the recordings of the music here in question are not infringing new and original arrangements and adaptations of the musical compositions, the subject matter of the causes of action herein.

2. That the defendants Mastertone, Gene Sayet and Sidney Feldman did not "manufacture" the phonograph records as that term is used in the Copyright Act.

3. That the acts of the defendants Mastertone, Gene Sayet and Sidney Feldman did not require any authorization, permission, consent or license from the plaintiffs.

4. That the acts of the defendants Mastertone, Gene Sayet and Sidney Feldman were done at the request of and for the account of defendant Apollo, which is liable to said defendants for any loss sustained herein.

After hearing the testimony of the parties and examining the pleadings, the exhibits and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law, each of which, insofar as relevant, applies to all parties and claims in this action.

### FINDINGS OF FACT

1. This action arises under the United States Copyright Law, Title 17 U.S.C. (1947) as amended, and Title 28 U.S.C.

§ 1338. (Pretrial Order, p. 2, ¶ 3(a) (1))[1]

2. Plaintiffs, defendant Apollo and defendant Mastertone are corporations incorporated under the laws of the State of New York. (Amended Complaint, ¶¶ 3, 22, 41, 58, 77, 95, 113, 132, 150, 167; no denial)

3. At all times pertinent hereto, plaintiffs have been and continue to be the proprietor of a valid United States statutory copyright, or renewal copyright, in the musical compositions, the subject of their respective causes of action herein, to the following extent:

| PLAINTIFF | | TITLE | EXTENT OF PROPRIETORSHIP |
|---|---|---|---|
| LEO FEIST, INC. | 1. | "FIVE FOOT TWO, EYES OF BLUE (Has Anybody Seen My Girl?)" | 66⅔% |
| " " " | 2. | "HONEY" | 66⅔% |
| " " " | 3. | "TOOT TOOT, TOOT-SIE! (Goo'-Bye)" | 100% |
| MILLS MUSIC, INC. | 4. | "MARGIE" | 100% |
| " " " | 5. | "I CAN'T GIVE YOU ANYTHING BUT LOVE" | 100% |
| " " " | 6. | "DIGA DIGA DOO" | 100% |
| " " " | 7. | "WHEN YOU'RE SMILING (The Whole World Smiles With You)" | Not less than 80% |
| SHAPIRO, BERN-STEIN & CO., INC. | 8. | "IF YOU KNEW SU-SIE (Like I Know Su-sie)" | 75% |
| DE SYLVA, BROWN & HENDERSON, INC. | 9. | "GOODY, GOODY" | 100% |
| PEER INTERNATION-AL CORPORATION | 10. | "LAZY RIVER" | 100% |

The plaintiffs have duly filed notice of the use of their respective copyrighted musical compositions for the manufacture of parts of instruments serving to reproduce the same mechanically, prior to such use thereof by defendants. (PTO, pp. 2–4, ¶¶ 3(a) (2), 3(a) (3), 3(a) (4); Pl. Ex. 4, pp. 11, 12 (admitted by defendants); Pl. Ex. 5)

4. Defendant Apollo manufactured long playing phonograph records as part of an album bearing the legend on the jacket thereof, "The Swinging 20's Go Latin," and the designation, "APOLLO

---

1. For convenience, the Pretrial Order is hereinafter referred to as "PTO." Items 3(a) (1) through 3(a) (20) of the PTO were stipulated into evidence at the trial, November 10, 1968, Stenographer's Minutes (hereinafter abbreviated "SM"), pages 153 and 154.

RECORDS N. Y. CORP., 1780 BROADWAY, NEW YORK, N. Y.," with the description, "all time favorites from the 'Roaring 20's'—all decked out in bright and shiny new Latin dance arrangements * * * Cha Cha, Mambo, Pachanga and Merengue—in this album you'll find something completely new—authentic Latin treatments of familiar songs that still manage to keep the flavor and feeling of the originals." (PTO, p. 4, ¶ 3(a) (5); Pl. Ex. 13)

5. Each of the musical compositions, the subject of each of plaintiffs' respective causes of action herein, was used in the manufacture of said phonograph records, in the absence of a license agreement therefor and without service of a notice of intention to use said musical compositions prior to the use thereof, under the compulsory license provisions of the Copyright Act. (PTO, p. 4, ¶¶ 3(a) (6), 3(a) (7))

6. Defendant George Albert was the president and sole stockholder of defendant Apollo and it was established that he (a) had nothing to do with the management of the business (SM 46); (b) had no specific duties (Pl. Ex. 8, p. 3); (c) did not participate in matters regarding acquisition of new material, repertoire, or sales (Pl. Ex. 8, p. 5); (d) provided the initial capital for the formation of defendant Apollo; (e) financed its operations; (f) executed checks to pay its bills; (g) approved the manufacture and distribution of Plaintiffs' Exhibit 13 (Pl. Ex. 9, pp. 11–12); (h) engaged its accountant and its general manager. (PTO, p. 5, ¶ 3(a) (9); Pl. Ex. 9, pp. 5–12)

7. The acts of defendant Apollo in making such uses of plaintiffs' respective copyrighted musical compositions were performed under the direction of defendant Carl Le Bow who (a) was its general manager at all times pertinent hereto; (b) was in charge of its office activities; (c) was responsible for its phonograph record repertoire; (d) originated the idea for the phonograph record album entitled, "The Swinging 20's Go Latin," and selected the musical compositions to be used in the manufacture of said phonograph records; (e) arranged for the initial recording of plaintiffs' musical compositions by the Steven Scott Orchestra on master recordings thereof, in preparation for the pressing of such phonograph records therefrom; (f) arranged for the pressing of said phonograph records from such master recordings; (g) arranged for the preparation and production of art work used as part of the albums; and (h) arranged for the sales of said albums containing such phonograph records. (PTO, p. 5, ¶ 3(a) (8))

8. Neither defendant George Albert nor Carl Le Bow is liable for the acts of the corporation Apollo, which is itself exclusively liable for infringement of 17 U.S.C. § 101(e).

9. The recording of Plaintiffs' Exhibit 13 was done by Mastertone. Mastertone recorded, edited and prepared for Apollo the master tapes which were used by Apollo for the manufacture of the offending recordings. Mastertone submitted three invoices to Apollo evidencing its services, specifically referring therein to "ALP–496 A/B" and "Roaring 20's," which were respectively the catalogue number of the offending phonograph record and the title of the record. (PTO, pp. 9–10, ¶¶ 3(a) (17) and 3(a) (20); Pl. Ex. 11)

10. Defendant Gene Sayet was the recording engineer employed by Mastertone, who served as audio mixer and editor of the recording at issue in this case. He was also the secretary of Mastertone and a stockholder. (Pl. Ex. 10, p. 3) On April 27, 1961, April 28, 1961 and May 3, 1961, Sayet made the master recording of the musical compositions included on Plaintiffs' Exhibit 13. (Pl. Ex. 10, p. 4; PTO, p. 9, ¶ 3(a) (18))

11. Defendant Sidney Feldman was the recording engineer employed by Mastertone, who served as engineer on the recording at issue in this case. He was also the treasurer of Mastertone and a stockholder. (Pl. Ex. 12, p. 3) Feldman

mastered the recordings by cutting the master record on a special machine. He did not know what musical material was on the tape which he mastered; he had only the name of the recordings and the timings for each band. (Pl. Ex. 12, p. 4; PTO, p. 9, ¶ 3(a) (19))

■ 12. Defendants Mastertone, Gene Sayet and Sidney Feldman are not liable for the manufacture of Plaintiffs' Exhibit 13, the sole responsibility for which rests with Apollo.

13. Prior to the production of the phonograph records which are the subject of this action, plaintiffs licensed the production of records with Latin dance arrangements such as Cha-Cha, Mambo, Pachanga and/or Merengue. (Stipulation of all parties, October 7, 1968)

14. Plaintiffs' Exhibit 13, the record which is the subject of this litigation, was produced in 1961. (SM 49) The records were pressed by Silver Park Records, Inc. (hereinafter called "Silver Park"), which was the only record presser for this particular recording. (SM 48, 50) Apollo maintained shipping invoices or bills from Silver Park showing each and every record manufactured. (SM 50) The records thus manufactured by Silver Park were then sold to 19 or 20 record distributors. (SM 46-47) Apollo maintained sales invoices showing each and every record sold by it to a distributor. (SM 59) Accordingly Apollo maintained in its files all purchase and all shipping invoices dealing with Plaintiffs' Exhibit 13.

Subsequent to the institution of this law suit, Leon Schuster, a certified public accountant since 1937, employed by Apollo as accountant, compared the purchase invoices (Deft. Ex. B) with duplicate records supplied by Silver Park. They matched exactly. He then compared the purchase invoices with sales invoices (Deft. Ex. C) and prepared a general summary of the manufacture and sales of Plaintiffs' Exhibit 13. (SM 55-62) Defendants' Exhibit D, the summary drawn by Schuster, indicates that

a total of 3,086 records were purchased from Silver Park, of which 494 were distributed free and 1,684 were sold to distributors.

There were no other books or records kept in the regular course of business by Apollo which would shed any additional light on the questions of manufacture, production or sale of Plaintiffs' Exhibit 13. The general books of account kept by the corporation but inadvertently misplaced or destroyed contained only monthly summaries of purchases and sales of each phonograph record, tallied from the very purchase and sales invoices received in evidence as Defendants' Exhibits B and C. (SM 62)

■ 15. Plaintiffs are entitled to royalties from defendant Apollo, pursuant to 17 U.S.C. § 1(e), at the rate of $0.02 per infringement for each of the 3,086 records manufactured, based upon the extent of their proprietary interests as established by Finding of Fact 3:

$ 41.15 on the First Cause of Action
$ 41.15 on the Second Cause of Action
$ 61.72 on the Third Cause of Action
$ 61.72 on the Fourth Cause of Action
$ 61.72 on the Fifth Cause of Action
$ 61.72 on the Sixth Cause of Action
$ 49.38 on the Seventh Cause of Action
$ 46.29 on the Eighth Cause of Action
$ 61.72 on the Ninth Cause of Action
$ 61.72 on the Tenth Cause of Action
$548.29 TOTAL

16. The manufacture of Plaintiffs' Exhibit 13 occurred between May and September, 1961; the sale of the offending recordings occurred between May 1961 and May 1962. (Deft. Ex. D) On or about September 23, 1964, defendant Apollo served upon plaintiffs, respectively, and sent to the Copyright Office, a purported "Notice of Intention to use a copyrighted musical composition," dated June 11, 1962. (PTO, p. 6, ¶ 3(a) (12)) On September 28, 1964, defendants delivered to plaintiffs a check representing purported payment for such uses of copyrighted material as had previously

been made, together with a Certified C.P.A. Report and Analysis of Sales of Apollo Album No. 496, a photostatic copy of each invoice submitted by the record presser for such album, and a photostatic copy of each invoice issued by Apollo, including either the sale or distribution of said album. (PTO, p. 6, ¶ 3(a) (12))

17. By written communications dated June 8, 1962 and September 17, 1962, Apollo offered to pay the royalties due under 17 U.S.C. §§ 101(e). (PTO, pp. 7-8, ¶¶ 3(a) (13) and 3(a) (14)) Again, on March 12, 1964, by written communication, Apollo renewed its offer to settle all royalties due under §§ 101(e). (PTO, pp. 8-9, ¶ 3(a) (15)) All offers were rejected by the plaintiffs.

18. The defendant Apollo has at all times stood ready, willing and able, and continues to be ready, willing and able, to pay any and all royalties, plus penalties and costs, which may be assessed in connection with the production of said record under § 101(e) of the Copyright Law and has tendered and continues to tender such payment. (PTO, pp. 6-9, ¶¶ 3(a) (12) 3(a) (15); see also SM 123–124, 125, 127, and Pl. Ex. 6)

19. The first official request by plaintiffs for an accounting pursuant to 17 U.S.C. § 101(e) occurred by written communication dated December 4, 1961. (Pl. Ex. 7) The first offer to account for royalties due from defendants to plaintiffs occurred on June 8, 1962. (Finding of Fact 17) Accordingly, Apollo was approximately four and one-half months delinquent.

20. Plaintiffs are entitled to damages in the amount of an additional $548.29 for violation of the notice provisions of 17 U.S.C. § 101(e), thus requiring a royalty of $1,096.58 total. No further damages are justified due to the continuous and conscientious attempts by defendants to settle the royalties due, and the corresponding bad faith of the plaintiffs in refusing to accept royalties tendered while insisting upon expanded damages under 17 U.S.C. § 101(b).

21. Plaintiffs are entitled to no award for the alleged infringement of copyright predicated upon 17 U.S.C. § 101(b), since their sole remedy on these facts lies under 17 U.S.C. § 101(e).

## DISCUSSION

### I.

### THE ALLEGED VIOLATION OF 17 U.S.C. § 101(b) BY THE MAKING OF A COMPLETELY NEW AND UNAUTHORIZED ARRANGEMENT OF PLAINTIFFS' COPYRIGHTED MUSICAL COMPOSITIONS

The plaintiffs allege that the defendants are jointly and severally liable for the unauthorized creation of a new arrangement of plaintiffs' copyrighted musical compositions. To sustain this allegation, the plaintiffs have offered the following proof:

(a) An alleged "admission" of liability for the creation of a new and unauthorized arrangement by virtue of the statement, "[a]s we have said so many times before, there seems to be no question that our client did not obtain the required license and is liable to your clients under the copyright law," contained in the letter from defendants' attorneys to plaintiffs' attorneys, dated March 12, 1964. (PTO, p. 8, ¶ 15)

This informal acknowledgment of liability "under the copyright law" by the defendants was intended to imply an admission to liability under 17 U.S.C. § 101(e) and not under 17 U.S.C. § 101(b). The admission must be taken in the context of the entire letter, which refers to previous and continuing attempts by defendants to tender proper royalty payments and penalties to plaintiffs pursuant to 17 U.S.C. § 101(e). (See PTO, pp. 6-9, ¶¶ 3(a) (12)–3(a) (15); SM 120–127)

(b) An alleged "admission" binding upon all defendants to this action contained on the record jacket of Plaintiffs' Exhibit 13, which boldly announces, "[t]hat everyone, young and old alike,

will know the words goes without saying because here we have seventeen (17) all time favorites from the 'Roaring 20's'—all decked out in bright and shiny new Latin dance arrangements—Cha Cha, Mambo, Pachanga and Merengue. * * [I]n this album you'll find something completely new—authentic Latin treatments of familiar songs that still manage to keep the flavor and feeling of the originals."

■ This acknowledgment by defendants of "New Latin dance arrangements" and "authentic Latin treatments" displayed as promotional advertising upon the jacket of Plaintiffs' Exhibit 13 is not even "some evidence" of the making of a new and unauthorized arrangement of plaintiffs' musical compositions. The phrase "Latin dance arrangements" may indicate merely that the tempo or rhythm of the piece has been altered for dancing purposes; and the phrase "authentic Latin treatments" may refer exclusively to interpretation or emphasis supplied by the current artists to the original arrangement. No proof was adduced on trial describing or analyzing the various recordings or so-called "arrangements." No expert testimony was presented by the plaintiffs concerning the nature of the musical arrangements, even though in the Pretrial Order plaintiffs specifically reserved the right to call two expert witnesses on this issue. (PTO, p. 18, ¶ 6) Accordingly, in the absence of proof which might import a special context to the language on the record jacket, this court is constrained to construe these particular phrases as ambivalent promotional opinions and not as evidence sufficiently compelling to sustain the plaintiffs' burden of proof.

(c) An alleged judicial admission by defendant Apollo (binding upon all other defendants as joint tort feasors) in the Answer to the Original Complaint (Pl. Exs. 1 and 2), through failure to deny ¶¶ 15, 33, 49, 66, 82, 98, 115, 131, 147, 164 of the Original Complaint, which charges that said defendant "made and produced, and distributed, vended and sold, an arrangement and adaptation of said musical composition."

(d) An alleged judicial admission by Apollo (binding upon all other defendants as joint tort feasors) in the Answer to the Amended Complaint, through failure to deny ¶¶ 15–16, 34–35, 51–52, 70–71, 88–89, 106–107, 125–126, 143–144, 160–161, 179–180, which charges that said defendant "made and produced, or contributed to or participated or [was] concerned in, the making and production of, a new and original arrangement and adaptation of said musical composition * * *."

It will be noted in connection with items (c) and (d) above that defendants Apollo, George Albert and Carl Le Bow in ¶ 3(c) (7) of the Pretrial Order stated: "upon the trial hereof, defendants, Apollo, Et Al., will move to amend their answer to affirmatively allege a denial to making any new or original arrangements of plaintiffs' material, except to the extent that any recording thereof may be considered a new arrangement." On September 25, 1968, at a Pretrial Conference held before this court with attorneys for all parties present, Samuel A. Zimbalist, attorney for defendants Apollo, George Albert and Carl Le Bow made and argued such a motion, which was granted by this court. (Hearing, September 25, 1968, pp. 15–24)

The defendants' final Amended Answer to the Amended Complaint sufficiently explains these failures to deny various allegations of the Original and Amended Complaints. (See Pl. Exs. 1 and 2, the Amended Complaint and Answer thereto, and hearing, September 25, 1968, pp. 15–24) Defendants denying making any new or original arrangements of plaintiffs' material, *except to the extent that any recording thereof may be considered a new arrangement.* (Hearing, September 25, 1968, p. 16)

The precise questions at issue in this claim were decided in the case of Edward B. Marks Music Corporation v. Foullon, 79 F.Supp. 664 (S.D.N.Y.1948), aff'd 171 F.2d 905 (2nd Cir. 1949). In a closely

reasoned opinion which examined the distinctions between 17 U.S.C. § 101(b) and 17 U.S.C. §§ 1(e) and 101(e), Judge Goddard held that the separate and distinct right to make an arrangement and version of a musical composition is limited to printing, reprinting, publishing, copying, or vending, and does not cover the right to mechanical reproduction. Observing that an intellectual conception is not protected apart from the manner of its use, Judge Goddard noted that

"To hold that the separate and distinct right to make a version and arrangement also existed in connection with the right to mechanical reproduction, would be to rewrite the section so as to add to subsection (a) [17 U.S.C. § 1] the right to mechanical reproduction. This the Congress has steadfastly refused to do on the ground that to grant to the copyright owner the right to control the arrangement and version of the mechanical reproduction would be to create an opportunity for the birth of mechanical trusts. * * *" 79 F.Supp. at 666.

Particularly applicable to the present facts are the following trenchant observations:

"It is also to be noted that the requirement that a 'compulsory licensee' be limited in its use in mechanical reproduction to the use originally made or granted by the plaintiff in the initial mechanical reproduction, has been liberally construed. This requirement has been said to mean that the reproduction need not be identical, but that *some latitude must be allowed to each manufacturer to prepare an individual instrumental or vocal arrangement of the composition.* Shafter, Musical Copyright (1932), p. 230; Third Copyright Law Symposium, 1940, pp. 123–124." Id. at 667. (Emphasis supplied)

In the instant case, there has been no shred of proof demonstrating that these so-called "arrangements" were anything more than individual artistic interpretations of the "standard arrangement," whatever they may be. It is clear, however, that plaintiffs have duly licensed the production of records with Latin dance arrangements such as Cha Cha, Mambo, Pachanga, and/or Merengue under 17 U.S.C. § 101(e), without claim of an infringement of 17 U.S.C. § 101(b). (Finding of Fact 13) Furthermore, as Judge Goddard observed:

"There is no evidence showing either the mechanical reproduction initially made by the plaintiff or by its licensee, nor in what way the defendants' version and arrangement differed from it. For that reason alone the claim is not sustained." Edward B. Marks Music Corporation v. Foullon, 79 F.Supp. at 666–667.

In the present case, plaintiffs have produced no evidence showing the nature of the mechanical reproduction originally made, no evidence demonstrating the nature of the original printed arrangement, and no evidence demonstrating the difference between the so-called "arrangements" of defendants and the "standard" mechanical reproduction or printed arrangement.

Accordingly, the plaintiffs have not sustained their burden of proof on this claim. Even if they had adduced sufficient evidence to demonstrate the existence of a new arrangement contained upon Plaintiffs' Exhibit 13, their proper remedy would lie under 17 U.S.C. § 101 (e), and not under 17 U.S.C. § 101(b).

## II.

## THE ADMITTED VIOLATION OF 17 U.S.C. § 101(e) BY THE UNLICENSED PRODUCTION AND SALE OF MECHANICAL REPRODUCTIONS OF PLAINTIFFS' COPYRIGHTED MUSICAL COMPOSITIONS

### A. ROYALTIES

Defendant Apollo admits the manufacture of phonograph records, serving to reproduce mechanically various interpretations of plaintiffs' compositions, without any license or authorization therefor, and without service of a notice of intention to use said musical compo-

sitions, thereby infringing plaintiffs' respective copyrights in these musical opera. (See Findings of Fact 4 and 5; 17 U.S.C. §§ 1(e) and 101(e); Reeve Music Co. v. Crest Records, Inc., 285 F.2d 546 (2nd Cir. 1960); Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263 (2nd Cir. 1959).

17 U.S.C. § 1(e) provides in pertinent part as follows:

"* * * as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof. * * *

"In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount. * * *"

17 U.S.C. § 101(e) provides in pertinent part as follows:

"* * * whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition upon the parts of instruments serving to reproduce mechanically the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention, by registered mail, upon the copyright proprietor at his last address disclosed by the records of the copyright office, sending to the copyright office a duplicate of such notice; and in case of his failure so to do the court may, in its discretion, in addition to sums hereinabove mentioned, award the complainant a further sum, not to exceed three times the amount provided by section 1, subsection (e), of this title, by way of damages, and not as a penalty, and also a temporary injunction until the full award is paid."

Apollo is the admitted "manufacturer" of Plaintiffs' Exhibit 13; it conceived, planned, executed, promoted and sold the offending recordings. In the process of creating Plaintiffs' Exhibit 13, Apollo engaged the services of Mastertone to record, mix, edit, and master the recording, and of Silver Park to press long-playing records discs and ship such records to designated distributors. It appears from Defendants' Exhibit F, which this court has no reason to mistrust (Cf. Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263 (2nd Cir. 1959)), that a total of 3,086 records were pressed by Silver Park and purchased by Apollo, of which 494 were distributed free of charge and a total of 1,684 records were sold. (Finding of Fact 14) Accordingly, based upon the figure of 3,086 records actually manufactured, plaintiffs are entitled to royalties from defendant Apollo pursuant to 17 U.S.C. § 1(e), at the rate of $0.02 per infringement for each record manufactured, based upon the extent of their proprietary interest as established by Findings of Fact 3 and 15. The total amount of this award for royalties, exclusive of damages, is $548.29. (Finding of Fact 15)

## B. DAMAGES

■■ As the Court of Appeals for the Second Circuit has observed, "it is vital for the copyright proprietor to have prompt notice." Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263 (1959). Since the notice provisions are the "keystone" of the mandatory licensing scheme under the Copyright

Law, violations should be dealt with strictly. Norbay Music, Inc. v. King Records, Inc., 249 F.Supp. 285, 289 (S.D.N.Y.1966). And it is no excuse that the defendants relied upon a custom or trade practice of awaiting completion of manufacture and distribution of a recording before filing a notice of intention to use copyrighted material or accounting to plaintiffs pursuant to a request properly directed to defendants some four and one-half months before compliance. (Findings of Fact 16–19) See Famous Music Corporation v. Seeco Records, Inc., 201 F.Supp. 560 (S.D.N.Y. 1961), and cases cited therein at page 566; Southern Music Publishing Co., Inc. v. Seeco Records, Inc., 200 F.Supp. 704 (S.D.N.Y.1960).

In mitigation of this violation, however, it must be noted that Apollo has always admitted its liability under § 101 (e), has continuously attempted to account to plaintiffs for liability under § 101(e) since June 1962, has in no way attempted to camouflage its identity as the manufacturer of the album, has never attempted to frustrate the assessment of damages by concealment of records, and has openly relied upon an industry-wide practice which, while no excuse to liability, still affords some measure of explanation for conduct. Accordingly, in the exercise of my discretion to award a further sum not to exceed three times the $548.29 due as royalties, I set the damages at $548.29, thus assessing a royalty of $1,096.58 total. (See Finding of Fact 20)

## C. ATTORNEYS' FEES

■ Like treble damages, counsel fees may be awarded in the discretion of the court where warranted by the circumstances of the case. 17 U.S.C. § 116. According to the Second Circuit, the " * * * provision for attorneys' fees * * * has been sparingly used and the amounts awarded modest." Orgel v. Clark Boardman Co., 301 F.2d 119, 122, 2 A.L.R.3d 1203 (2nd Cir.), cert. denied 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed. 2d 58 (1962). As Judge Bryan of this

court has noted, "[p]erhaps one reason for this restrictive interpretation is that the counsel fees provision was designed 'to penalize the losing party as [well as] to compensate the prevailing party,'" (citations omitted). Norbay Music, Inc. v. King Records, Inc., 249 F.Supp. 285, 289 (S.D.N.Y.1966). As Judge Bryan also noted in his carefully considered opinion, the cases reveal that a fee allowance is rarely made where there are unsettled issues of law and fact. The case at bar certainly does not disclose a "highly technical argument" on the part of the defendant, Mailer v. RKO Teleradio Pictures, Inc., 332 F.2d 747, 749–750 (2nd Cir. 1964), nor a "lack of substance" to its contention, Boucher v. Du Boyes, Inc., 253 F.2d 948, 950 (2nd Cir. 1958) (per curiam), factors which in the past have influenced the Second Circuit to authorize an award of counsel fees.

■ In short, in the case at bar, as in Norbay Music, Inc. v. King Records, Inc., supra, by no stretch of the imagination was defendants' claim "so lacking in merit as to present no arguable question of law," nor was it designed to annoy, "vex or harass" the plaintiffs. Cloth v. Hyman, 146 F.Supp. 185, 193 (S.D.N.Y. 1956). Indeed, it appears from the record that the plaintiffs themselves proceeded capriciously and in bad faith by refusing to accept royalties tendered while insisting upon expanded damages under 17 U.S.C. § 101(b). Accordingly, in the exercise of discretion, I shall deny counsel fees in this case.

## III.

### ALLEGED LIABILITY OF MASTER-TONE, GENE SAYET and SIDNEY FELDMAN

■ In G. Ricordi & Co. v. Columbia Graphophone Co., 270 F. 822 (S.D.N.Y. 1920), the District Court affirmed a determination by a Special Master that the various steps taken to produce a record stamper were all essential to the manufacturer and that the party who made all the arrangements was deemed

to be the manufacturer. In Edward B. Marks Music Corporation v. Foullon, 79 F.Supp. 664 (S.D.N.Y.1948), aff'd 171 F.2d 905 (2nd Cir. 1949), the District Court dismissed the complaint of a musical copyright owner against the record pressing company on the grounds that such a sub-contractor was not a "manufacturer" within the meaning of 17 U.S.C. § 1(e). In Reeve Music Co. v. Crest Records, Inc., 285 F.2d 546 (2nd Cir. 1960), the Second Circuit Court of Appeals held that, under 17 U.S.C. § 101(e), the "manufacture" of records in violation of this statute is an active infringement, that infringement of a copyright is a tort, and that all persons concerned therein are jointly and severally liable as joint tort feasors. The court determined, upon the particular facts in the case, that where defendants were affiliated corporations, conducting their operations at the same address, and one of the defendants produced a "master stamper" which the other defendant used to "press" a number of records, whether or not the separate act performed by each defendant constituted "manufacture," the two defendants, acting in concert, "manufactured" the offending recording within the meaning of 17 U.S.C. § 101(e).

In the present case, as in Edward B. Marks Music Corporation v. Foullon, supra, the general manufacturer, in this case Apollo, hired the artists, recording studio and pressing plant. Apollo did not act "jointly" or in "concert" with Mastertone, nor did it conduct a business at a joint address with Mastertone. Apollo was the general manuacturer and general contractor in fact as well as name. Accordingly, on the authority of G. Ricordi & Co. v. Columbia Graphophone Co., supra, and Edward B. Marks Music Corporation v. Foullon, supra, the Complaint and Amended Complaint must be dismissed on the merits as to defendant Mastertone. It, therefore, follows that the Complaints and Amended Complaints against Gene Sayet and Sidney Feldman, who acted merely as employees of

Mastertone and who held no other position in the manufacturing process, must be dismissed on the merits.

## IV.

## ALLEGED LIABILITY OF GEORGE ALBERT and CARL LE BOW AS JOINT TORT FEASORS WITH APOLLO

While it is undeniably true that all persons concerned in the infringement of a copyright are jointly and severally liable as joint tort feasors, Gross v. Van Dyk Gravure Co., 230 F. 412 (2nd Cir. 1916), the controlling cases in this circuit on the issue of liability of the officers and employees of a corporate "manufacturer" who violates 17 U.S.C. §§ 1(e) and 101(e) are the District Court and Court of Appeals decisions in Edward B. Marks Music Corporation v. Foullon, 79 F.Supp. 664 (S.D.N.Y.1948), aff'd 171 F.2d 950 (2nd Cir. 1949). In the opinion of the District Court, the status of Foullon as president of United Masters, Inc., the general manufacturer, was conceded. It appears that Foullon engaged artists, hired a recording studio, hired an electroplating plant, hired a pressing plant, and supervised the sales of all records so produced. In other words, Foullon was a combination of George Albert and Carl Le Bow. The District Court held as follows:

"Although plaintiff cites cases where individuals were held liable for what appeared to be the acts of corporate bodies, these cases all concern individual liability where there has been infringement by a corporate body. The case at bar is void of any element of infringement.

"The record shows that Foullon served as an officer of United Masters, Inc., but all the actions in the manufacturing of the records were done as corporate acts. The Copyright Act makes the manufacturer liable; it does not refer to the officers, agents or employees." Id. at 667.

The District Court thereupon dismissed the Complaint and the Amended Complaint against Foullon on the merits. This determination was approved by the Second Circuit Court of Appeals.

In Foullon, the District Court obviously used loose language in referring to "any element of infringement." However, from a careful reading of the entire opinion, it is clear that the court was referring to "infringement" under 17 U.S.C. § 101(b) rather than § 101(e), or § 1(e). Thus, the District Court held that the precedents binding individuals for corporate acts which involve violation of § 101(b) and related statutes do not similarly apply to violations of § 1(e) or § 101(e), thereby justifying a determination that United Masters was liable for royalties and damages under §§ 1(e) and 25 (the predecessor of 17 U.S.C. §§ 101(b) and (e)). The Court of Appeals considered and affirmed the holdings of the District Court, thereby foreclosing further argument of the matter.

Accordingly, the Complaints and Amended Complaints against George Albert and Carl Le Bow must be dismissed on the merits.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the issues pursuant to Title 17 United States Code and Title 28 U.S.C. § 1338.

2. All causes of action against George Albert and Carl Le Bow, an officer and employee respectively of defendant Apollo, must be dismissed on the merits.

3. All causes of action against Mastertone, Gene Sayet and Sidney Feldman must be dismissed on the merits.

4. All causes of action against Apollo predicated upon 17 U.S.C. § 101(b) must be dismissed on the merits.

5. Plaintiffs are entitled to the sum of $1,096.58, representing payment in full for all royalties due and owing from Apollo under 17 U.S.C. § 1(e), together with a discretionary increment con-

stituting damages under 17 U.S.C. § 101(e).

6. The plaintiffs are entitled to costs against defendant Apollo, but they are not entitled to any counsel fees.

Settle judgment on notice pursuant hereto.